# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARBOR GLOBAL STRATEGIES, LLC., <br><br> Plaintiff <br><br> v. <br><br> XILINX, INC., <br><br> Defendant. | C.A. No. 19-cv-01986-MN |

## XILINX INC.'S OPENING BRIEF IN SUPPORT OF ITS
## MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

FISH & RICHARDSON P.C.
Ronald P. Golden III (#6254)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 652-5070
golden@fr.com

David M. Hoffman
111 Congress Avenue, Suite 810
Austin, TX 78701
(512) 472-5070
hoffman@fr.com

Jeffrey Shneidman
One Marina Park Drive
Boston, MA 02210
(617) 542-5070
shneidman@fr.com

Dated: December 19, 2019        *Attorneys for Xilinx Inc.*

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. SUMMARY OF ARGUMENT ..............................................................................1

III. NATURE AND STATE OF PROCEEDINGS........................................................3

IV. CONCISE STATEMENT OF FACTS ....................................................................3

    A. Facts Relating to Standing: Timeline of Assignments..............................3

        1. The Original Patent Owner Assigns the "Entire Right, Title and Interest" in the Patents to Two Third-Party Individuals........................................................................................3

        2. The Original Patent Owner Executes a Second Invalid Purported Assignment to the Plaintiff Who Files Suit..................4

        3. Xilinx Notifies AGS That AGS Lacks Standing .........................5

    B. Facts Relating to AGS's Failure to Plausibly Allege Infringement................................................................................................6

V. ARGUMENT...........................................................................................................6

    A. Plaintiff Does Not Have Standing to Bring the Patent Infringement Claims ...................................................................................6

        1. AGS Does Not Have Constitutional Standing.............................7

        2. AGS Also Does Not Have Statutory Standing ............................9

    B. The Lawsuit Should Be Dismissed With Prejudice Because the Patent Claims Require "Stacked," Not the Alleged "Side-By-Side"..........................................................................................................10

VI. CONCLUSION......................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abraxis Bioscience, Inc. v. Navinta LLC*,
 625 F.3d 1359 (Fed. Cir. 2010) ........................................................................................... 7, 8

*Advanced Cardiovascular Systems, Inc. v. Scimed Life Sciences Systems, Inc.*,
 988 F.2d 1157 (Fed. Cir. 1993) ......................................................................................... 11, 14

*AgroFresh Inc. v. Hazel Techs., Inc.*,
 No. CV 18-1486 (MN), 2019 WL 1859296 (D. Del. Apr. 25, 2019) ....................................... 9

*Cedars-Sinai Med. Ctr. v. Watkins*,
 11 F.3d 1573 (Fed. Cir. 1993) ................................................................................................. 7

*Cumberland Pharm. Inc. v. Sagent Agila LLC*,
 No. CV 12-825-LPS, 2013 WL 5913742 (D. Del. Nov. 1, 2013) ..................................... 10, 14

*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*,
 517 F.3d 1284 (Fed. Cir. 2008) ............................................................................................... 8

*Horatio Washington Depot Techs. LLC v. TOLMAR, Inc.*,
 No. CV 17-1086-LPS, 2018 WL 5669168 (D. Del. Nov. 1, 2018) ........................................ 12

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
 925 F.3d 1225 (Fed. Cir. 2019) ........................................................................................... 7, 9

*Mortensen v. First Fed. Sav. & Loan*,
 549 F.2d 884 (3d Cir. 1977) .................................................................................................... 7

*Port-A-Pour, Inc. v. Peak Innovations, Inc.*,
 No. 13-CV-01511, 2015 WL 292913 (D. Colo. Jan. 20, 2015) ............................................. 10

*Roper v. Jo-Ann Stores, Inc.*,
 211 F. App'x 950 (Fed. Cir. 2007) ......................................................................................... 10

*Samsung Elecs. Co. v. ON Semiconductor Corp.*,
 541 F. Supp. 2d 645 (D. Del. 2008) ................................................................................ 4, 7, 9

*Thermolife Int'l LLC v. GNC Corp.*,
 922 F.3d 1347 (Fed. Cir. 2019) ............................................................................................... 3

*Uniloc USA, Inc. v. ADP, LLC*,
 772 F. App'x 890 (Fed. Cir. 2019) ......................................................................................... 10

**Statutes**

35 U.S.C. § 281 ..................................................................................................................................9

35 U.S.C. § 285 ..................................................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ..............................................................................................................7, 9

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ *passim*

I.      INTRODUCTION

Plaintiff Arbor Global Strategies ("AGS") has sued Defendant Xilinx, Inc. ("Xilinx") on four nearly identical patents, asserting that it is the "sole owner" of the Patents-in-Suit. But Plaintiff AGS has no standing because it does not own the Patents-in-Suit. This case must be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), because AGS lacks constitutional standing to invoke this Court's judicial power and statutory standing to seek relief under the patent laws.

Further, even assuming all of AGS's allegations were true, AGS has actually pled facts to show that the Accused Products do not practice the asserted patents. For this additional reason, the Court should grant Xilinx's motion to dismiss with prejudice under Fed. R. Civ. P. 12(b)(6).

II.     SUMMARY OF ARGUMENT

Contrary to its alleged basis for standing in this lawsuit, AGS is not the "sole owner" of—and indeed does not appear to have any ownership of—the Patents-in-Suit. The U.S. Patent and Trademark Office ("USPTO")'s public assignment records show that ten years ago, in 2009, the prior owner of the Patents-in-Suit, Arbor Company ("Arbor"), transferred the "entire right, title and interest" in the Patents-in-Suit to two third parties, Mary Ann Guzy and Mark Guzy. Although the USPTO records show that Arbor attempted to make a second assignment of "its right, title, and interest" in the Patents-in-Suit just nine days before AGS filed this lawsuit, Arbor at that time had no ownership rights to transfer. Plaintiff AGS does not have constitutional or statutory standing to proceed, and this case must be dismissed under both Fed. R. Civ. P. 12(b)(1) & (b)(6).

This case further presents the rare situation where the Plaintiff alleges facts showing that the Accused Products do not practice the asserted patents. Specifically, each of the patent claims in this lawsuit concern "**stacking**" of certain integrated circuit die elements, *e.g.*, a "field programmable gate array" (FPGA) with a "memory" or a "microprocessor." All four of the patents use the same picture to show "stacking":

1



(*See* D.I. 1 at Ex. 1-4 at 1; figure description at D.I. 1 at Ex. 1, 3:29-32, Ex. 2, 4:3-6, Ex. 3, 4:5-8, Ex. 4, 3:25-28 ("[The figure] is a . . . view of a reconfigurable processor module **in accordance with the present invention** comprising a hybrid device incorporating a number of **stacked integrated circuit die elements**."))

In contrast, the Complaint repeatedly alleges that "Xilinx uses a silicon manufacturing process on which multiple die are set **side-by-side** and interconnected." (*Id.* ¶¶ 38, 41, 58, 74, 76, 93)  The Plaintiff shows this **side-by-side** configuration in its Complaint (edited to retain color as in original showing "FPGA" and "memory" side-by-side; other portions of image greyed out):



(*See id.* ¶¶ 26, 28, 37, 39, 56, 58, 75, 92 (same image showing side-by-side))  Even completely crediting the complaint as true, it simply does not show practice of the stacking limitations.  For this additional reason, AGS has not plausibly pled any claim patent infringement and Xilinx

2

respectfully requests the Court dismiss this Complaint with prejudice per Fed. R. Civ. P. 12(b)(6).[1]

### III. NATURE AND STATE OF PROCEEDINGS

The proceedings in this case have just started. Plaintiff AGS filed its Complaint on October 18, 2019. This motion to dismiss is Defendant Xilinx's response to that Complaint.

### IV. CONCISE STATEMENT OF FACTS

#### A. Facts Relating to Standing: Timeline of Assignments

##### 1. The Original Patent Owner Assigns The "Entire Right, Title and Interest" in The Patents to Two Third-Party Individuals

There are four related patents in this lawsuit. Each patent has the same title and same two named inventors. (*Id.*, Ex. 1-4) Each patent was originally assigned by its inventors to Arbor Company. (*Id.*) On February 23, 2009, Arbor (as "Assignor") entered into an agreement with two individuals, Mary Ann Guzy and Mark Guzy (collectively, as "Assignee") whereby:

> Assignor **hereby grants, assigns, and conveys** to Assignee **the entire right, title and interest in and to the [Patents]** including without limitation all proceeds thereof (such as, by way of example, license royalties and proceeds of infringement suits), the right to sue for past, present and future infringements, all rights corresponding thereto throughout the world and all reissues, divisions, continuations, renewals, extensions, and continuations-in-part thereof.

(*See* Ex. A[2] (U.S. Patent and Trademark Office Assignment Record, Reel/Frame 022320/0200 at 022320/0205) (available at http://legacy-assignments.uspto.gov/assignments/assignment-pat-

---

[1] By this motion Xilinx further provides "early notice of the defects in plaintiffs' infringement assertions" and its intention to seek attorney fees under 35 U.S.C. § 285 for any continued or future meritless assertion of these patents. *See Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1357 (Fed. Cir. 2019).

[2] All exhibits cited herein are attached to the Declaration of Ronald P. Golden III filed concurrently herewith.

22320-200.pdf) (hereinafter "2009 Agreement").[3]  The 2009 Agreement made Mary Ann Guzy and Mark Guzy the sole owners of the Patents-in-Suit.  The U.S. Patent and Trademark Office's records contain no subsequent assignment from Mary Ann Guzy or Mark Guzy to anyone else.  (*See, e.g.,* Ex. B (USPTO assignment summary for exemplary patent-in-suit) (available at https://assignment.uspto.gov/patent/index.html#/patent/search/resultAbstract?id=7126214&type=patNum)

### 2. The Original Patent Owner Executes a Second Invalid Purported Assignment to the Plaintiff Who Files Suit

On October 7, 2019, Arbor recorded an agreement between itself and Plaintiff AGS wherein Arbor purported to "sell, assign, transfer, and convey . . . all its right title, and interest" in the Patents-in-Suit.  (*See* Ex. C (USPTO Assignment Record, Reel/Frame 050641/0207 at 050641/0209) (available at http://legacy-assignments.uspto.gov/assignments/assignment-pat-050641-207.pdf) (hereinafter "October 2019 Agreement"))  But in October 2019 Arbor had no "right, title, or interest" to "sell, assign, transfer, and convey" because those rights were still held by Mary Ann Guzy and Mark Guzy.  Although Arbor in the October 2019 Agreement attempted to transfer "its right, title and interest," it had no transferrable rights to convey.

On October 18, 2019, AGS sued Xilinx for patent infringement.  AGS alleged in its signed Complaint that "[a]ll rights, title, and interest in [each Patent-in-Suit] have been assigned to AGS, who is **the sole owner** of [each Patent]."  (D.I. 1 ¶¶ 12, 15, 18, 21 (emphasis added)).  This statement is untrue because AGS does not own the patents.

---

[3] As noted below, when resolving a 12(b)(1) factual standing dispute, "the Court is not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations in the complaint [and] the Court may consider evidence outside the pleadings" to resolve any factual issues bearing on jurisdiction.  *Samsung Elecs. Co. v. ON Semiconductor Corp.*, 541 F. Supp. 2d 645, 648 (D. Del. 2008).  Further, as noted below (collecting cases), the Court may take judicial notice of public records, such as the USPTO's public assignment records.

### 3. Xilinx Notifies AGS That AGS Lacks Standing

On November 15, 2019, Xilinx's counsel wrote to AGS's counsel to advise AGS of its apparent standing problem. (*See* Ex. D) Xilinx wrote:

> We note that AGS alleged in its complaint that AGS is the "sole owner" and has "all rights, title, and interest" in each of the Patents-in-Suit. However, in light of the public records above stating otherwise, please provide all documents on which AGS is relying on to make these assertions. Please provide all records relating to the grant, assignment, or conveyance of any rights in the Patents-in-Suit; in particular, please provide to us any agreements or other documents that involve or relate to Mary Ann Guzy, Mark Guzy, and Arbor Company, LLLP.

(*Id.* at 2) Counsel for Xilinx also requested to resolve the issue informally:

> If AGS cannot establish standing, Xilinx may need to seek relief from the Court. However, we believe that it would be in both parties interest to avoid this cost and trouble if AGS can make a credible showing that it has standing to proceed.

(*Id.*) Eleven days later, on November 26, 2019, counsel for AGS responded with a short letter that did not provide any evidence of ownership or address the standing problem. (*See* Ex. E) In relevant part, AGS's letter stated:

> The [2009 Agreement] was entered into to secure judgments in favor of Mary Ann Guzy and Mark Guzy. Both of these judgments have been satisfied and released as a matter of public record. Accordingly, the [2009 Agreement] is no longer in effect and Arbor Company was the sole owner of the patents-in-suit when it assigned the patents to [AGS].

(*Id.* at 2.[4] Tellingly, AGS did not claim that Mary Ann Guzy or Mark Guzy had ever transferred ownership of the patents in suit to Arbor Company. Nor did AGS address the fundamental problem

---

[4] AGS's letter referred to the "public record" without any further citation. Xilinx searched the public record and found no assignment of patent rights, but did find a series of lawsuits between Arbor, Mark Guzy, and Mary Ann Guzy, with hundreds of docket entries, including but not limited to: *Guzy v. Guzy*, 05-ap-5031 (D. Nev. U.S. Bankr. Ct.), *Guzy v. Arbor Company*, 08-cv-398 (D. Nev.), *Guzy v. Guzy*, 08-cv-407 (D. Nev.), *Guzy v. Guzy*, 19-cv-129 (D. Nev.) (an open matter and per D.I. 39 in that case, stayed in April 2019 "pending *Guzy v. Arbor Company LLP et al. and Guzy*, Case No. 12-CV-0300 (D. Nev.)]"). Given the open litigation between Arbor and the recorded owners of the Patents-in-Suit, the failure by AGS to provide to Xilinx a valid assignment from Mary Ann Guzy and Mark Guzy at Xilinx's request is troubling.

raised by Xilinx, i.e., that as a matter of public record, "the entire right, title and interest in and to the [Patents]" had been "hereby grant[ed], assign[ed], and convey[ed] to [Mary Ann Guzy and Mark Guzy]" in 2009. (Ex. A at 022320/0205)

### B. Facts Relating to AGS's Failure to Plausibly Allege Infringement

All of the asserted claims require two stacked integrated circuits, *e.g.*, a "microprocessor"/"programmable array" stack or a "memory array"/"field programmable gate array" (FPGA) stack.

- Asserted claim 1 in the '226 Patent recites "at least one **microprocessor** integrated circuit die element **stacked** with and electrically coupled to said **programmable array** of said at least one field programmable gate array integrated circuit die element . . . ." (*See* D.I. 1 ¶ 30, Ex. 1 at 6:16-26 (emphasis added))

- Asserted claim 1 in the '214 Patent recites "a second integrated circuit functional element including a **memory array stacked** with and electrically coupled to said **field programmable gate array** . . . ." (*See id.* ¶ 49, Ex. 2 at 7:56-67 (emphasis added))

- Asserted claim 1 in U.S. Patent No. 7,282,951 recites "a first integrated circuit functional element including a **programmable array** . . . ; a second integrated circuit functional element **stacked** with and electrically coupled to said programmable array…wherein said second integrated circuit includes a **memory array** . . . ." (*See id.* ¶ 66, Ex. 3 at 7:58 -8:4)

- Asserted claim 23 in U.S. Reissued Patent No. RE42,035, recites a "a second integrated circuit die element including a **memory array stacked** with and electrically coupled to said **field programmable gate array** . . . ." (*See id.* ¶ 84, Ex. 4 at 7:39-49)

Notably, AGS does not specifically allege that any of the Accused Products include any of the claimed stacks. Instead, AGS's Complaint repeatedly alleges that "Xilinx uses a silicon manufacturing process on which multiple die are set **side-by-side** and interconnected." (*See id.* ¶¶ 38, 41, 58, 74, 76, 93 (emphasis added))

### V. ARGUMENT

### A. Plaintiff Does Not Have Standing to Bring the Patent Infringement Claims

AGS lacks both the constitutional standing and statutory standing needed to bring this lawsuit. As to constitutional standing, AGS has failed "'to demonstrate that it held enforceable

6

title to the patent at the inception of the lawsuit' [needed] to assert [constitutional] standing." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010).  As to statutory standing, AGS has also failed to show that it is entitled to seek relief under 35 U.S.C. § 281.  *See, e.g.*, *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234-35 (Fed. Cir. 2019).

### 1. AGS Does Not Have Constitutional Standing

When evaluating Xilinx's factual challenge to AGS's constitutional standing under Fed. R. Civ. P. 12(b)(1), the Court does **not** presume AGS's pleadings are true.  *Samsung Elecs. Co. v. ON Semiconductor Corp.*, 541 F. Supp. 2d 645, 648 (D. Del. 2008).[5]  Moreover, AGS bears the burden of proving that it has standing.  *Id.*

Here, AGS is proceeding in this suit on the false assertion that it is the "sole owner" of the Patents-in-Suit. (*See* D.I. 1 at ¶¶ 12, 15, 18, 21)  As outlined above, Arbor in 2009 transferred "the entire right, title and interest" to two individuals, Mary Ann Guzy and Mark Guzy.  (*See* 2009 Agreement, Ex. A at 022320/0205)  There is no record showing that Mary Ann Guzy and Mark Guzy ever transferred their ownership in the Patents-in-Suit back to Arbor, prior to Arbor's purported assignment of its rights to Plaintiff AGS.  (*See, e.g.*, Ex. B)  Moreover, as outlined above, when Xilinx pointed out the standing defect and asked for support that AGS was the "sole owner" AGS provided no evidence.  (*See* Ex. D at 2); (Ex. E at 2)

What AGS told Xilinx in its letter (without including support)—i.e., that Mary Ann Guzy and Mark Guzy had obtained judgments against Arbor and that these judgments had been "released as a matter of public record"—does not address the standing problem.  Even if that had

---

[5]  *See also Mortensen v. First Fed. Sav. & Loan*, 549 F.2d 884, 891 (3d Cir. 1977)); *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993) (citing *Mortensen* approvingly).

been originally alleged, a review of the 2009 Agreement confirms that a "Release" executed by Mary Ann Guzy or Mark Guzy does not transfer title to Arbor or anyone else. Specifically, the 2009 Agreement, paragraph 8, states:

> At such time as Assignee executes the Release, this Agreement shall terminate and Assignee **shall execute** and deliver to Assignor **all deeds, assignments and other instruments as may be necessary or proper to re-vest in Assignor full title to the Patents, subject to any disposition thereof** which may have been made by Assignee pursuant hereto.

(Ex. A ¶ 8) That is, the 2009 Agreement recognizes that "other instruments" are required to "re-vest" the title held by Mary Ann Guzy and Mark Guzy. As the Federal Circuit has held, "contracts that obligate the [patent] owner to grant rights in the future do not vest legal title to the patents in the assignee." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364–65 (Fed. Cir. 2010).[6]

Indeed, the *Abraxis* holding applies directly to the facts in this case: In *Abraxis*, as here, two parties entered into an agreement with similar "shall" language, which the Federal Circuit held "indicates that the actual transfer of the asserted patents was to occur in the future." *Id.* As Abraxis holds, "a mere promise to assign rights in the future [is] not an immediate transfer of expectant interests." *Id.* Mirroring the situation in *Abraxis*, "[Arbor] could not assign the patents [to AGS] because [Arbor] did not possess their titles. [Arbor] had no legal title to assign and, therefore, [AGS] lacked standing to commence this litigation." *Abraxis*, 625 F.3d at 1365.

AGS has failed to meet its burden to show that it has constitutional standing to proceed in this lawsuit. *Samsung*, 541 F. Supp. 2d at 648. The allegation that it is the "sole owner" of the Patents-in-Suit is entitled to no "presumption of truthfulness" on this 12(b)(1) motion, and is

---

[6] "[T]he question of whether a patent assignment clause creates an automatic assignment or merely an obligation to assign is intimately bound up with the question of standing in patent cases. We have accordingly treated it as a matter of federal law." *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008).

8

countered by the public record and by AGS's own failure to provide supporting evidence when given the opportunity. *Id.* As such, Xilinx respectfully requests this Court grant its challenge to the Court's subject matter jurisdiction and dismiss AGS's Complaint under Fed. R. Civ. P. 12(b)(1).

### 2. AGS Also Does Not Have Statutory Standing

These same facts also show that AGS lacks statutory standing to seek relief under the Patent Laws. *See* 35 U.S.C. § 281 ("A patentee shall have remedy by civil action for infringement of his patent."); *Lone Star*, 925 F.3d at 1235. Unlike constitutional standing that is evaluated under Fed. R. Civ. P. 12(b)(1), the Court evaluates a statutory standing defect under Fed. R. Civ. P. 12(b)(6).

Here, AGS has alleged that it is the "sole owner" of the Patents-in-Suit, (D.I. 1 at ¶¶ 12, 15, 18, 21) However, the above concise facts show that AGS does not have statutory standing and contradict AGS's allegation. In evaluating the statutory standing question under 12(b)(6), although the Court "must accept all well-pleaded factual allegations in the complaint as true," the "court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'" *AgroFresh Inc. v. Hazel Techs., Inc.*, No. CV 18-1486 (MN), 2019 WL 1859296, at *1 (D. Del. Apr. 25, 2019) (citing *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017).

AGS's allegation that it is the "sole owner" should not be accepted as true because that allegation is "contradict[ed by] matters properly subject to judicial notice," i.e., the 2009 Assignment showing that Arbor in 2009 transferred the title to the Patents-in-Suit to third parties. (*See* Ex. A at Reel/Frame 022320/0205)[7] Therefore, for this additional reason, Xilinx respectfully

---

[7] In a patent case, examples of matters properly subject to judicial notice include the patent's intrinsic record. *See Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890, 898 (Fed. Cir. 2019); *see*

9

requests this Court find AGS lacks statutory standing and dismiss AGS's Complaint under Fed. R. Civ. P. 12(b)(6).

> **B.     The Lawsuit Should Be Dismissed With Prejudice Because the Patent Claims Require "Stacked," Not the Alleged "Side-By-Side"**

The Complaint should also be dismissed with prejudice because the Complaint convincingly lays out a case of **non-infringement**. *See Cumberland Pharm. Inc. v. Sagent Agila LLC*, No. CV 12-825-LPS, 2013 WL 5913742, at *1-3 (D. Del. Nov. 1, 2013) (granting 12(b)(6) dismissal where "claims of the asserted patent cover only a formulation 'free from a chelating agent,' yet the Complaint alleges that [defendant's] product contains EDTA, which is 'a chelating agent.'"); *Roper v. Jo-Ann Stores, Inc.*, 211 F. App'x 950, 951 (Fed. Cir. 2007) (affirming 12(b)(6) dismissal where structural limitation of asserted patent was incompatible with allegations about accused product).[8]

Fed. R. Civ. P. 12(b)(6) allows trial courts to terminate lawsuits "that are fatally flawed . . . and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial

---

*also*, *e.g.*, *Port-A-Pour, Inc. v. Peak Innovations, Inc.*, No. 13-CV-01511, 2015 WL 292913, at *2 (D. Colo. Jan. 20, 2015) (taking judicial notice of records in USPTO's patent assignment database).

[8] In *Roper*, the Federal Circuit affirmed the 12(b)(6) dismissal where there was a contradiction between a patent's structural limitation and the accused products, which is the same type of issue in this case:

> In this case, **even if all the alleged facts are taken as true**, they would not support a finding that Jo–Ann's accused products infringe either independent claim of the '909 patent. **Both claims of the patent require multiple "vertically spaced" "sections" or "layers,"** wherein plants can grow. The **accused product is simply a block of rigid green foam**, into which a customer can insert flowers in an arrangement. Even if we assume that Jo–Ann's floral foam could, in principle, support growing plants, it **completely fails to meet any of the structural limitations of the claims** of the '909 patent. **It therefore cannot infringe**, and dismissal of Roper's patent infringement claims was proper.

*Roper*, 211 F. App'x at 951 (emphasis added).

activity." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Scis. Sys., Inc.*, 988 F.2d 1157, 1160-61 (Fed. Cir. 1993). This case is exactly that "fatally flawed" lawsuit, and Xilinx should be so spared, because AGS alleges just the opposite of what the claims require. That is, each of the asserted patent claims requires two **stacked** integrated circuits, *e.g.*, a "microprocessor"/"programmable array" stack or a "memory array"/"field programmable gate array" (FPGA) stack. All four of the patents use the same picture to show "stacking" of these microprocessor / memory / FPGA elements:



(*See* D.I. 1, Ex. 1-4 at 1) The Patent describes this figure as showing "processor module **in accordance with the present invention** comprising a hybrid device incorporating a number of **stacked** integrated circuit die elements." (*Id.*, Ex. 1, 3:29-32, Ex. 2, 4:3-6, Ex. 3, 4:5-8, Ex. 4, 3:25-28)

But AGS alleges repeatedly that "Xilinx uses a silicon manufacturing process on which **multiple die are set side-by-side** and interconnected." (*Id.* ¶¶ 38, 41, 58, 74, 76, 93) The Complaint contains this picture that shows the **side-by-side** configuration of Xilinx's accused products in its Complaint. (*See id.* ¶¶ 26, 28, 37, 39, 56, 58, 75, 92 (image edited to retain color as in original showing "FPGA" and "memory" side-by-side; other portions of image greyed out)):

11



(*See id.* ¶¶ 26, 28, 37, 39, 56, 58, 75, 92 (same image showing side-by-side)); (*see also id.* ¶¶ 27, 37, 40, 56, 57, 76, 93 (images labeled "side by side die layout" in pictures shown in Complaint))[9]

To walk through one example in detail, consider AGS's allegations about purported infringement of '214 Patent claim 1. That patent claim recites in relevant part:

> 1. A programmable array module comprising:
>   at least a first integrated circuit functional element including a field programmable gate array; and
>   at least a second integrated circuit functional element including a **memory array** <u>stacked</u> with and electrically coupled to said **field programmable gate array** of said first integrated circuit functional element . . . ."

(*See* D.I. 1 ¶ 49, Ex. 2 at 7:56-67 (emphasis added))  Not only does the Complaint fail to allege that the '214 Alleged Products contain a memory array stacked with a FPGA,[10] but at ¶¶ 56-58, the Complaint shows the same picture as depicted above of the FPGA **side by side** with a memory.

Moreover, paragraph 57 uses the term "electrically coupled" which is language that appears immediately adjacent to the "stacked" limitation in '214 Patent claim 1 (*see* previous page), but

---

[9] Notably, while the picture also shows a "Si Interposer" and a "Package Substrate," AGS does not allege (and there would be no Rule 11 or rational basis to allege) that the interposer or substrate is a microprocessor, memory, or FPGA as required by the patent claims.

[10] This failure of pleading is sufficient by itself to grant dismissal of the patent infringement claims. *See Horatio Washington Depot Techs. LLC v. TOLMAR, Inc.*, No. CV 17-1086-LPS, 2018 WL 5669168, at *11-12 (D. Del. Nov. 1, 2018), *report and recommendation adopted*, No. CV 17-1086-LPS-CJB, 2019 WL 1276028 (D. Del. Mar. 20, 2019) ("Defendants are correct that Plaintiff has not pleaded facts relating to these claim limitations, sufficient to explain why it is plausible that Defendants' product/acts satisfy those elements of the claims.").

the Complaint pointedly omits any allegation that the FPGA and memory are "stacked." Instead, AGS shows the following picture after paragraph 57, which states "**side by side die layout**":



(*See* D.I. 1 at 20 (¶ 57) (red box added))  Enlarged, that red box is the following image:



(*See id.* ¶ 57 (excerpt) (identifying benefits of a "Side by Side" layout).  AGS's allegations about the '214 Accused Products being "side by side," *e.g.*,



is the opposite of the patents' requirements that the relevant circuitry be stacked:

13



(*Id.*, Ex. 2 at 1 (color added). This flaw is repeated for each of the other Patents-in-Suit.[11] There is no infringement because even assuming all of the pled facts to be true, there is "no reasonable view of the facts pled in [the Complaint] that would support a claim for relief." *See Cumberland Pharm. Inc.*, 2013 WL 5913742, at *2-3 (agreeing with defendant's argument that "[a]s a matter of both common sense and controlling law," the court should dismiss on 12(b)(6) a patent infringement lawsuit that effectively alleges a product does not practice a claim limitation).

## VI. CONCLUSION

AGS's infringement case is "fatally flawed in their legal premises and destined to fail." *Advanced Cardiovascular Sys.*, 988 F.2d at 1160-61. For the reasons discussed above, AGS has no constitutional or statutory standing, and the Complaint demonstrates that the Accused Products do not infringe the Patents-in-Suit. Therefore, Xilinx respectfully requests this Court to dismiss this case with prejudice.

---

[11] (*Compare* D.I. 1 ¶¶ 29-43 (asserting '226 Patent claim 1) *with* '226 Patent claim 1; *id.*, Ex. 1 at 6:16-26); (*compare id.* ¶¶ 65-78 (asserting '951 Patent claim 1) *with* '951 Patent claim 1, *id.*, Ex. 3 at 7:58 -8:4); (*compare id.* ¶¶ 83-95 (asserting '035 Patent claim 23) *with* '035 Patent claim 23, *id.*, Ex. 4 at 7:39-49) The indirect infringement counts rely on showing direct infringement and allege no additional facts. *Id.* ¶¶ 44-47, 61-64, 79-82, 96-99.

Dated:  December 19, 2019 FISH & RICHARDSON P.C.

By: */s/ Ronald P. Golden III*
Ronald P. Golden III (#6254)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 652-5070
golden@fr.com

David M. Hoffman
111 Congress Avenue, Suite 810
Austin, TX 78701
(512) 472-5070
hoffman@fr.com

Jeffrey Shneidman
One Marina Park Drive
Boston, MA 02210
(617) 542-5070
shneidman@fr.com

**ATTORNEYS FOR DEFENDANT
XILINX, INC.**