# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ARBOR GLOBAL STRATEGIES LLC,  )
a Delaware Limited Liability Company,  )
                                             )
                   Plaintiff,  )
        v.  )     C.A. No.  19-1986-MN
                                             )
XILINX, INC., a Delaware Corporation,  )
                                             )
                  Defendant.  )

## ARBOR GLOBAL STRATEGIES LLC'S OPPOSITION TO XILINX, INC.'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
James Hannah
Kristopher Kastens
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
(650) 752-1700

Jonathan S. Caplan
Marcus A. Colucci
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Dated:  January 16, 2020
6544956

Philip A. Rovner (#3215)
Jonathan Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE  19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiff Arbor Global Strategies LLC*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.    RELEVANT Background ........................................................................................... 1

    A.    The Asserted Patents ................................................................................... 2

    B.    Arbor Company Assigns Asserted Patents as Collateral Security for Debt .......... 3

    C.    Arbor Company Fully Pays Debt, Thereby Terminating Patent Collateral
Assignment and Extinguishing Assignee's Rights in the Asserted Patents ............ 4

    D.    Arbor Company Assigns all Rights in Asserted Patents to Arbor Global ............. 5

III.    Argument ................................................................................................................... 6

    A.    Arbor Global Has Constitutional and Statutory Standing ...................................... 6

        1.    Xilinx Ignores that the Patent Collateral Assignment Merely
Conveyed a Security Interest in the Asserted Patents ................................ 6

        2.    The Terms of the Patent Collateral Assignment Do Not Require
Any "Instruments" to "Re-vest" Title to Asserted Patents. ....................... 8

    B.    Arbor Global's Infringement Claims Are Sufficiently Pled and Deemed True ... 10

        1.    Arbor Global Properly Plead the "Stacked" Element. .............................. 10

        2.    Xilinx's Claim Construction Argument is Premature and
Contradicts the Intrinsic Record. ............................................................. 14

        3.    Xilinx Admits that its Accused ICs are "Stacked" so its Non-
Infringement Argument is Not Only Premature but also Incorrect. .......... 16

    B.    Arbor Global Requests Relief in the Alternative. ................................................ 17

IV.    Conclusion ............................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018)...........................................................................14

*Akazawa v. Link New Tech. Int'l, Inc.*,
    520 F.3d 1354 (Fed. Cir. 2008)........................................................................6, 8

*Applied Cos. v. U.S.*,
    144 F.3d 1470 (Fed. Cir. 1998).....................................................................6, 7, 9

*Baker v. Rapport*,
    453 F.2d 1141 (1st Cir. 1972)..............................................................................7

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012)..........................................................................10

*Cumberland Pharms. Inc. v. Sagent Agila LLC*,
    C.A. No. 12-825-LPS, 2013 WL 5913742 (D. Del. Nov. 1, 2013) ...................13, 14

*Eagle Pharms., Inc. v. Hospira, Inc.*,
    C.A. No. 18-1074-CFC, 2019 U.S.Dist. LEXIS 217306 (D. Del. Dec. 18, 2019) .................14

*Endo Pharm. Inc. v. Mylan Techs. Inc.*,
    C.A. No. 11-220-GMS, 2013 WL 936452 (D. Del. Mar. 11, 2013).......................17

*Foman v. Davis*,
    371 U.S. 178 (1962)...........................................................................................17

*Gerber Sci. Int'l, Inc. v. Satisloh AG*,
    No. 07-cv-1382 (PCD), 2009 WL 2869705 (D. Conn. Sept. 2, 2009) ...........7, 8, 9

*Horatio Washington Depot Techs. LLC v. TOLMAR, Inc.*,
    C.A. No. 17-1086-LPS, 2018 WL 5669168 (D. Del. Nov. 1, 2018) ......................13

*Kanematsu Corp. v. Advanced Materials Lanxide, LLC*,
    C.A. No. 01-190-JJF, 2002 Dist. U.S. LEXIS 27043 (D. Del. Sept. 30, 2002).........................7

*Kroy IP Holdings, LLC v. Groupon, Inc.*,
    C.A. No. 17-1405-MN-SRF, 2018 U.S. Dist. LEXIS 173437 (D. Del. Oct. 9, 2018) ...........14

*In re Leisure Time Sports, Inc.*,
    194 B.R. 859 (9th Cir. B.A.P. 1996)......................................................................6

*LoganTree LP v. Omron Healthcare, Inc.*,
  C.A. No. 18-1617-MN, 2019 WL 4538730 (D. Del. Sept. 19, 2019) ....................................18

*Major's Furniture Mart, Inc. v. Castle Credit Corp., Inc.*,
  449 F. Supp. 538 (E.D. Pa. 1978), *aff'd* 602 F.2d 538 (3d Cir. 1979).......................................6

*McCoy v. Favata*,
  C.A. No. 17-1046-MN, 2019 WL 1429570 (D. Del. Mar. 29, 2019)......................................17

*Modern Telecom Sys., LLC v. TCL Corp.*,
  C.A. No. 17-583-LPS-CJB, 2017 WL 6524526 (D. Del. Dec. 21, 2017) ..............................18

*Nalco Co. v. Chem-Mod, LLC*,
  883 F.3d 1337 (Fed. Cir. 2018)...............................................................................................14

*Nationstar Mortg. LLC v. Springs at Spanish Trail Ass'n*,
  No. 2:15-cv-01217-JAD-GWF, 2019 U.S. Dist. LEXIS 87668 (D. Nev. May
  24, 2019) ...................................................................................................................................6

*Par Pharm., Inc. v. Hospira, Inc.*,
  C.A. No. 17-944-JFB-SRF, 2018 WL 3343238 (D. Del. May. 11, 2018)..............................14

*Paradise Creations, Inc. v. UV Sales, Inc.*,
  315 F.3d 1304 (Fed. Cir. 2003).................................................................................................9

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)...............................................................................................16

*Roper v. Jo-Ann Stores, Inc.*,
  211 F. App'x 950 (Fed. Cir. 2007) ..........................................................................................13

*Roswell Capital Partners LLC. v. Beshara*,
  436 F. App'x 34 (2d Cir. 2011) .................................................................................................6

*Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*,
  C.A. No. 15-691-LPS-CJB, 2016 U.S. Dist. LEXIS 132901 (D. Del. Sept. 20, 2016)............9

*In re Trejos*,
  352 B.R. 249 (Bankr. D. Nev. 2006) .........................................................................................6

*Unisys Fin. Corp. v. Resolution Trust Corp.*,
  979 F.2d 609 (7th Cir. 1992) .....................................................................................................6

*United Access Techs., LLC v. Centurytel Broadband Servs., LLC*,
  C.A. No. 11-399-LPS, 2016 U.S. Dist. Lexis 135455 (D. Del. Sept. 30, 2016) ....................14

*Univ. of Pittsburgh v. Varian Med. Sys., Inc.*,
  569 F.3d 1328 (Fed. Cir. 2009)...............................................................................................18

**Statutes**

35 U.S.C. § 261 .................................................................................................................. 10

35 U.S.C. § 281 .................................................................................................................. 10

**Other Authorities**

Fed. R. Civ. P. 8 ................................................................................................................ 10

## I.     INTRODUCTION

Xilinx, Inc.'s ("Xilinx" or "Defendant") Motion to Dismiss ("Motion") should be denied because a complete and valid assignment to the Asserted Patents gives Arbor Global Strategies LLC ("Arbor Global") standing to assert them.  Arbor Global has also more than adequately alleged how Xilinx infringes the Asserted Patents.

Xilinx's argument that Arbor Global does not own the Asserted Patents due to their previous assignment as a security interest in a Patent Collateral Assignment ("PCA") fails because this security interest was extinguished as a matter of law when the debt was repaid. Therefore, Xilinx's argument cannot be squared with black letter law holding that extinguishing a debt obligation terminates any accompanying security interest.  Nor can it be reconciled with the terms of the PCA, which provides that the PCA terminated when satisfactions of judgment were filed, which acknowledged full payment of the debt.

Separately, Xilinx's motion to dismiss argument regarding infringement is factually wrong, ignores the appropriate legal standard and is premature.  In particular, Xilinx's allegation that its Accused Product cannot be "stacked" ignores the factual allegations that the Court must review as true, namely Arbor's specific allegations in its Complaint that Xilinx's Accused Products are "stacked," including Xilinx's documents describing the Accused Products as "stacked."  Further, within the four corners of the Complaint, any construction of the term "stacked" is an improper attempt to raise a disputed claim construction argument on a motion to dismiss.  This alone warrants denial of the motion on that basis, consistent with case law in this district and the Federal Circuit.

## II.    RELEVANT BACKGROUND

Arbor Global is a Delaware corporation engaged in the electronics and computer industry. D.I. 1, Compl. ¶ 1.  Mr. D. James Guzy ("Mr. Guzy") was the founder of Arbor Company and is

a named inventor on each of the four Asserted Patents in this case, which were originally assigned to Arbor Company.  *Id*. ¶ 2; *see also id*. at Exs. 1-4.

## A.    The Asserted Patents

Arbor Global pioneered and developed novel integrated circuit ("IC") technologies that are the subject of the Asserted Patents, including the ability to increase the amount and speed of connections within an IC module through the use of a technology called through silicon vias ("TSV").  This patented IC technology has important applications, particularly in devices with restricted form factors, such as in modern smartphones and tablets.  D.I. 1, Compl. at ¶ 1.

Generally, the innovations in the Asserted Patents relate to a new type of IC called a "stacked die hybrid," which allows for an extremely compact processor module with increased data speeds and processing efficiency using the TSVs within an IC module.  This novel application of TSVs with programmable elements provides increased bandwidth and efficiency, as well as a smaller form factor than what had been available with traditional IC fabrication techniques.

The Asserted Patents share a common specification that describes several embodiments of the inventive use of TSVs, but nowhere is there any definition, admission or narrowing of the meaning of any claim terms, including "stacked."  Nor is there any disclaimer or disavowal in the prosecution histories of the Asserted Patents for claim terms, including "stacked."  Rather, the specification describes how using TSVs allows interconnections between die elements are faster than the prior art approach.  *See* D.I. 1-1, Ex. 4 ('035 Patent) at 2:19-36.

The Asserted Patents also explain that the configuration of a module is not limited to any particular combination of die elements:  "a module **60** in accordance with the present invention may also comprise any combination of one or more of the microprocessor die **64**, memory die **66** or FPGA **68** with any other of a microprocessor die **64**, memory die **66** or FPGA **68**."  *Id.* ('035

2

Patent) at 4:16-20.  Further, the Asserted Patents explain that various possible "functional

elements" – described as including I/O controller, memory, FPGA, microprocessor "or the like"

(*id.*, Ex. 2, '214 Patent at 7:19-22) – can be arranged in an inventive module and connected to

other inventive modules.  *Id.* ('214 Patent) at 7:9-28.

> **B.    Arbor Company Assigns Asserted Patents as Collateral Security for Debt**

Unrelated to the Asserted Patents, Arbor Company was involved in litigation against Mr.

Guzy's family members, including separate actions initiated by Mark Guzy ("Mark") and Mary

Ann Guzy ("Mary Ann") in 2005.[1]  Monetary judgments were entered in favor of Mark and

Mary Ann in each respective action (the "Judgments") in 2008.  On February 12, 2009, the

parties executed a Settlement Agreement which resolved the actions and set forth the terms for

satisfaction of the Judgments.  *See* Ex. 1.[2]

Solely to secure satisfaction of the Judgments, Mark and Mary Ann were granted security

interests in various property, including the Asserted Patents.  Relevant here, the Settlement

Agreement states:

> **VIII.   Security Interests**
> . . . .
> (B) **Patent Collateral Assignment**.  Arbor shall execute a Patent Collateral
> Assignment of the [Asserted Patents] in the form mutually agreed upon by
> the parties (the "**Patent Collateral Assignment**")

*Id.* at § VIII(B).  Section X of the Settlement Agreement, titled "Releases," provided that upon

satisfaction in full of the Judgments, Mark and Mary Ann were to file a Satisfaction of Judgment

---

[1]  In connection with his voluntary petition under Chapter 11 of the Bankruptcy Code, No. BK-N-05-50110-GWZ (D. Nev.), Mark commenced an adversary proceeding, Adversary Case No. 05-5031-GWZ (the "Adversary Proceeding").  Mary Ann commenced an action in the Ninth Judicial District Court of the State of Nevada, Douglas County, Case No. 05-CV-0322 (the "State Court Action").

[2]  Unless otherwise noted, all exhibits to this Opposition are attached to Declaration of Kristopher Kastens, filed herewith.

in their respective actions, and execute a "release of all parties to this Agreement from any and all claims in the form mutually agreed upon by the parties." *Id.* at § X(C)&(D). Mary Ann was also directed to "file all documents necessary and appropriate to terminate security interests and deeds of trust in her favor which were granted pursuant to this Agreement." *Id*. at § X(D).

Pursuant to the Settlement Agreement, on February 23, 2009, the Patent Collateral Assignment was executed by Arbor Company, Mark and Mary Ann. *See* D.I. 13-1, Ex. A at Frame: 0205-211. The scope of the Patent Collateral Assignment was expressly limited "to secure satisfaction of [the Judgments]" (*id*. PCA at § 1) and further provided:

> At such time as Assignee executes the Release, this Agreement shall terminate and Assignee shall executed and deliver to Assignor all deeds, assignments and other instruments as may be necessary or proper to re-vest the Assignor full title to the Patents, subject to any disposition thereof which may have been made by Assignee pursuant hereto.

*Id*., PCA at § 8. The Patent Collateral Assignment was attached to a notarized "Notice of Security Interest in U.S. Patents" and recorded in the U.S. Patent Office ("USPTO") on February 23, 2009. D.I. 13-1, Ex. A at Frame: 0202. This document was recorded by the USPTO as a "Security Agreement." *Id.* at Frame: 0200. On March 12, 2009 Mark and Mary Ann filed UCC-1 financing statements to perfect their security interest in the Asserted Patents. Exs. 2, 3.

### C.   Arbor Company Fully Pays Debt, Thereby Terminating Patent Collateral Assignment and Extinguishing Assignee's Rights in the Asserted Patents

Arbor Company paid fully the amounts owed to Mark and Mary Ann, thereby extinguishing their security interest in the Asserted Patents under the Patent Collateral Assignment. On February 27, 2012, pursuant to the Settlement Agreement, Mark filed a "Full Satisfaction of Judgment" in the Adversary Proceeding, "acknowledg[ing] full satisfaction of Defendant Arbor Company's obligation to Plaintiff . . . ." Ex. 4 at 1. When Mary Ann failed to duly file her documentation, Arbor Company sought relief from the court in the State Court

Action.  On August 1, 2019, the court granted Arbor Company's motion and entered an Order holding:

> Arbor Parties have *fully satisfied* their obligations to Mary Ann Guzy under the Judgment and, therefore, *all liens and notice of liens that Mary Ann Guzy has against Arbor Parties' property are extinguished and without further effect.*

Ex. 5 at ¶ 4 (emphases added).[3]

Thus, as of August 1, 2019, neither Mary Ann nor Mark had any rights whatsoever in the Asserted Patents.

### D.    Arbor Company Assigns all Rights in Asserted Patents to Arbor Global

On September 26, 2019, Arbor Company assigned its rights in the Asserted Patents to Arbor Global.  *See* Ex. 6 at Frame: 0209-211.  On October 7, 2019, that assignment was recorded with the U.S. Patent Office.  *Id.* at Frame: 0207.  The Complaint in this action was filed on October 18, 2019.

Set forth below is a timeline illustrating the events described above.



---

[3]  Arbor Company did not require Mark and Mary Ann to execute separate releases of parties to the Settlement Agreement from any and all claims.

### III.  ARGUMENT

#### A.  Arbor Global Has Constitutional and Statutory Standing

##### 1.  Xilinx Ignores that the Patent Collateral Assignment Merely Conveyed a Security Interest in the Asserted Patents.

Xilinx's argument that Arbor lacks standing because the Patent Collateral Assignment transferred to Mark and Mary Ann the "entire right, title and interest" in the Asserted Patents (Xilinx Br. at 7), is based on the incorrect premise that a patent collateral assignment is legally identical to a patent assignment.  In fact, "an assignment made as collateral security for a debt gives the assignee only a qualified interest in the assigned chose, commensurate with the debt or liabilities secured."  *See Applied Cos. v. U.S.*, 144 F.3d 1470, 1477 (Fed. Cir. 1998)(citation omitted).  Thus, contrary to Xilinx's argument, such assignment does not extinguish only if the assignee "transfer[s] their ownership in the Patents-in-Suit back to" the assignor.  Xilinx Br. at 7.  Rather, an assignment made as collateral security for a debt is "released upon repayment of the [assignor's] debt."  *Applied Cos.*, 144 F.3d at 1477; *see also Roswell Capital Partners LLC. v. Beshara*, 436 F. App'x 34, 35 (2d Cir. 2011) ("It is black letter law that extinguishing a debt obligation terminates any accompanying security interest because a security interest cannot exist independent of the obligation it secures.") (citation and internal quotations omitted).[4]

---

[4]  Although "state law . . . typically governs patent ownership" (*Akazawa v. Link New Tech. Int'l, Inc.*, 520 F.3d 1354, 1357 (Fed. Cir. 2008)), and both the Settlement Agreement and PCA contain Nevada choice of law clauses, there is no material difference between the laws of the states on the black letter law that payment of a debt in full extinguishes any attendant security interest.  *See, e.g., In re Trejos*, 352 B.R. 249, 263 (Bankr. D. Nev. 2006) ("[I]n short, no debt, no lien."); *In re Leisure Time Sports, Inc.*, 194 B.R. 859, 861 (9th Cir. B.A.P. 1996) ("A security interest cannot exist ... independent from the obligation which it secures.") (citation omitted); *Unisys Fin. Corp. v. Resolution Trust Corp.*, 979 F.2d 609, 611 (7th Cir. 1992) ("A lien is parasitic on a claim. If the claim disappears—poof! the lien is gone."); *Major's Furniture Mart, Inc. v. Castle Credit Corp., Inc.*, 449 F. Supp. 538, 544 (E.D. Pa. 1978), *aff'd* 602 F.2d 538 (3d Cir. 1979) (same); *Nationstar Mortg. LLC v. Springs at Spanish Trail Ass'n*, No. 2:15-cv-01217-JAD-GWF, 2019 U.S. Dist. LEXIS 87668, at *8-9 (D. Nev. May 24, 2019) (Nevada law

Here, the Patent Collateral Assignment was undisputedly made solely as collateral security for a debt:

- The assignment on which Xilinx relies is identified as a "Patent Collateral Assignment"

- The Settlement Agreement identified the Patent Collateral Assignment as one of the "Security Interests" granted to Mark and Mary Ann solely to secure payment of the Judgments. Ex. 1 at § VIII(B).

- The Patent Collateral Assignment was attached to a 'NOTICE OF SECURITY INTEREST IN U.S. PATENTS' filed with the USPTO that identifies Mark and Mary Ann as the "Secured Party." D.I. 13-1, Ex. A at Frame: 0202.

- The Patent Collateral Assignment expressly limits the scope of the assignment solely "[t]o secure the satisfaction of Mary Ann's Judgment and Mark's Judgment." D.I. 13-1, Ex. A (Patent Collateral Assignment) at § 1.

- Mark and Mary Ann filed UCC-1 financing statements in both California and Nevada to perfect their security interest in the Asserted Patents. Exs. 2-3.

Thus, the Patent Collateral Assignment transferred to Mark and Mary Ann "a mere collateral interest in, not full ownership of, the listed patents." *Gerber Sci. Int'l, Inc. v. Satisloh AG*, No. 07-cv-1382 (PCD), 2009 WL 2869705, at *5 (D. Conn. Sept. 2, 2009) (UCC-1 financing statement is "not necessary if a party holds full ownership of a patent."); *see also Baker v. Rapport*, 453 F.2d 1141, 1143 (1st Cir. 1972) ("assignment given as collateral security is commensurate with the debt secured" notwithstanding contractual language phrasing assignment "in absolute terms.").

Moreover, any and all rights Mary Ann and Mark had in the Asserted Patents were extinguished when the Judgments were fully paid. *Supra* pp. 4-5; Exs. 1, 6; *see also Applied Cos.,* 144 F.3d at 1477; *Kanematsu Corp. v. Advanced Materials Lanxide*, LLC, No. 01-190-JJF, 2002 Dist. U.S. LEXIS 27043, at *19 (D. Del. Sept. 30, 2002) (party "cannot as a matter of law

recognizes "[a] valid tender of payment operates to discharge a lien or cure a default.") (citation omitted).

claim right in [] patents" because party's security interest in patent was discharged by settlement; since "the underlying debt is extinguished, the security interest supporting that debt is also extinguished.") (citations omitted); *see also Akazawa*, 520 F.3d at 1356 ("ownership of a patent may be changed by operation of law.").

       For this reason alone, Xilinx's standing argument fails.

       **2.     The Terms of the Patent Collateral Assignment Do Not Require Any "Instruments" to "Re-vest" Title to Asserted Patents.**

       Xilinx ignores these black letter principles and wrongly argues that release of the Judgments "does not address the standing problem" because the Patent Collateral Assignment requires, in addition to such Release, "'other instruments' . . . to 're-vest' the title held by" Mary Ann and Mark.  Xilinx Br. at 7-8 (citing PCA § 8).  However, the PCA states only that such instruments "*may be* necessary or proper to re-vest in Assignor full title to the Patents" (D.I. 13-1, Ex. A, PCA § 8 (emphasis added)), acknowledging that such documents might not be necessary to transfer the Asserted Patents.

       Illustrative here is *Gerber*.  In *Gerber*, defendants argued that plaintiff lacked constitutional standing to sue for patent infringement because the prior owner of the patent-in-suit assigned "the entire right title, and interest of Assignor in and to the Patents" to JP Morgan in a Patent Collateral Assignment to secure a payment obligation.  2009 WL 2869705, at *5.  Defendants in *Gerber* made the precise argument Xilinx makes here, which the court rejected.  The court observed:

> Defendants argue that as Plaintiff has not produced documents evidencing the re-vesting of title, J.P. Morgan must still own all rights related to the [patent].  However, the Patent Collateral Assignment states only that such documents *may* be necessary.  The use of "may" implies that deeds or assignments might not be necessary to re-transfer the patents and the clause merely records the party financial responsible should documentation be needed.  Therefore, this lack of documentation does not prove that J.P. Morgan maintains ownership of the [patent].

*Id.* (emphasis in original).  The same rationale applies here.[5]  The PCA states that "this

Agreement shall terminate" upon execution of the Release.  D.I. 13-1, Ex. A, PCA § 8.  Thus, the

PCA terminated when Mark filed his Satisfaction of Judgment "acknowledg[ing] full satisfaction

of Defendant Arbor Company's obligation to Plaintiff" (*see* Ex. 4), and when the court in the

State Court Action compelled Mary Ann's Satisfaction of Judgment and observed that "all liens

and notice of liens that Mary Ann Guzy has against Arbor Parties' property are extinguished and

without further effect."  Ex. 5 at ¶ 4; *see also supra* pp. 3-5.

More fundamentally, setting aside the parties' dispute over the terms of the Patent

Collateral Assignment, any and all patent rights held by Mark and Mary Ann extinguished as a

matter of law when the Judgments were fully paid no later than August 1, 2019.  *See Applied*

*Cos.*, 144 F.3d at 1477.  Thus, Arbor Company held full title to the Asserted Patents when it

assigned its rights in the Asserted Patents to Arbor Global on September 26, 2019.  Ex. 6; *see*

*also supra* p. 5.   Arbor Global therefore has standing to sue for patent infringement because it

"held enforceable title to the patent at the inception of the lawsuit" on October 18, 2019.

*Paradise Creations, Inc. v. UV Sales, Inc*., 315 F.3d 1304, 1309 (Fed. Cir. 2003) (citation

omitted); *see also Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, No. 15-691-

LPS-CJB, 2016 U.S. Dist. LEXIS 132901, at *45-46 (D. Del. Sept. 20, 2016) (plaintiff was

---

[5] The only case on which Xilinx relies in support of its argument, *Abraxis Bioscience, Inc. v. Navinta LLC*, is entirely inapposite.  That case did not involve a patent collateral assignment, but rather an asset purchase agreement that contained a covenant to assign patent rights in the future by means of a separate "IP Assignment Agreement."  625 F.3d 1359, 1361 (Fed. Cir. 2010).  Thus, a separate agreement was necessary in that case to consummate the assignment.  The holding in *Abraxis* simply cannot be squared with the terms of the PCA, or with the Federal Circuit's rule an assignment made as collateral security for a debt is "released upon repayment of the [assignor's] debt."  *Applied Cos.,* 144 F.3d at 1477.

"patentee" and could bring suit under 35 U.S.C. §§ 261, 281 since it was assigned the patent

prior to bringing a claim).  Xilinx's motion to dismiss should be denied.

### B.    Arbor Global's Infringement Claims Are Sufficiently Pled and Deemed True

#### 1.    Arbor Global Properly Plead the "Stacked" Element.

At this stage, Arbor Global's factual allegations in its Complaint must be taken as true,

the Complaint must be construed in the light most favorable to Arbor Global, and Arbor Global

is only required to make "a plausible 'short plain' statement of [its] claim."  *In re Bill of Lading*

*Transmission & Processing Sys. Patent Litig.,* 681 F.3d 1323, 1331 (Fed. Cir. 2012) (citing Fed.

R. Civ. P. 8(a)(2)) (reversing dismissal of contributory infringement claim).  Here, Arbor Global

has plausibly pled that the accused Xilinx ICs are "stacked" as required by the claims because

they have different components stacked against each other in a chip.  For example, the following

paragraphs of the Complaint specifically call out the "stacked" element.

> 33.    Defendant's infringement includes the manufacture, use, sale, importation and
> offer for sale of Defendant's IC products that utilize processor modules that include multiple die
> elements electronically coupled through TSVs, including Xilinx's ICs with 3D Stacked Silicon
> Interconnects ("SSI") and HBM, which include Xilinx's Virtex FPGA, Virtex UltraScale FPGA,
> Virtex UltraScale+ FPGA, Kintex UltraScale FPGA, Kintex UltraScale+ FPGA ICs, and the
> Virtex UltraScale+ HBM ICs (collectively, the "'226 Accused Products").

D.I. 1 at ¶¶ 33, 52, 69, 87.

Arbor Global also specifically called out the structures in the Accused ICs as being

stacked, as shown in the example excerpt below:

35.    The '226 Accused Products utilize 3D integrated circuits and SSI and are

processing modules with a FPGA IC die element including programmable CLBs.  Xilinx SSI

technology uses the ASMBL architecture, which is a module structure including FPGA building

blocks as stacked tiles.



*Figure 2:*  **Representation of an FPGA Built with ASMBL Architecture**

D.I. 1 at ¶¶ 35, 54 and 89; *see also*, for example, D.I. 1 at ¶¶ 35, 54, 89 ("Xilinx SSI technology

uses the ASMBL architecture, which is a module structure … including FPGA building blocks

as stacked tiles.")(emphasis added); *id.* at ¶ 36 ("FPGA IC die elements stacked with and

electrically coupled using interposers with TSVs to interconnect different logic

regions.")(emphasis added).

Arbor Global further described how this stacking was done, and provided images

showing this stacking, as shown in the example excerpt below:

36.    The '226 Accused Products include FPGA IC die elements stacked with and

electrically coupled using interposers with TSVs to interconnect different logic regions.

11



Figure 5:  "X-ray View" of a Virtex-7 FPGA Using SSI Technology

D.I. 1 at ¶ 36.

Therefore Arbor Global has provided a plausible short plain statement of its claim against Xilinx.

Furthermore, Xilinx is incorrect that Arbor Global "does not specifically allege that any of the Accused Products include any of the claimed stacks," because Arbor Global specifically tied the claim element to a structure of the accused products.  In particular, Arbor Global pled how Xilinx uses vertically arranged functional elements, referred to as Stacked Silicon Interconnects ("SSI") with TSVs in its accused FPGA devices, such as the Virtex-7.  *See, e.g.,* D.I. 1 at ¶ 4 ("integrated circuit ("IC") products that utilize Field-Programmable Gate Array ('FPGA'), and these ICs include the use of through-silicon vias ('TSVs') within an IC, such as between multiple die layers or components that include at least one FPGA"); *id.,* ¶ 24 ("Defendant makes, uses, sells, offers for sale, and/or imports into the United States and this

District products and services that utilize Xilinx's ICs with 3D Stacked Silicon Interconnects ("SSI") and HBM, which include Xilinx's Virtex FPGA, Virtex UltraScale FPGA, Virtex UltraScale+ FPGA, Kintex UltraScale FPGA, Kintex UltraScale+ FPGA ICs, and Virtex UltraScale+ HBM ICs"). The Accused Products each include at least one FGPA in the IC module. D.I. 1 at ¶ 24 ("The Accused Products each include at least one FGPA in the IC module."); *id.,* ¶¶ 69-76. In fact, Xilinx explains how their design of accused FPGA devices allows different types of silicon to be interconnected as set forth in the Complaint. *See, e.g*. D.I. 1 at ¶ 26 ("Xilinx uses 3D high-performance FPGA ICs with SSI technology. This technology leverages the use of TSVs and a silicon interposer layer to achieve high-bandwidth and low latency connectivity between multiple heterogeneous die elements, such as between different FPGA logic die, transceivers, and memory units."). Xilinx simply ignores these allegations in its motion.

The cases that Xilinx cites do not support dismissal at this stage, as they were based on extraordinary circumstances, *e.g.* the patents were specifically stated to operate in a manner for which there was nothing identified to demonstrate infringement, or the structure was the exact opposite of what was stated. Xilinx's Br. at 10-11; *Cumberland Pharms. Inc. v. Sagent Agila LLC,* No. 12-825-LPS, 2013 WL 5913742, at *2 (D. Del. Nov. 1, 2013) (patent holder did not even allege the claim could be construed in a manner that would cover the accused products); *Roper v. Jo-Ann Stores, Inc.,* 211 F. App'x 950, 951 (Fed. Cir. 2007) (accused product completely lacking in the required structures); *Horatio Washington Depot Techs. LLC v. TOLMAR, Inc.,* No. 17-1086-LPS, 2018 WL 5669168, at *11-12 (D. Del. Nov. 1, 2018) (patent holder did not allege the accused product met required limitations of the claims).

That is not the case here, because Arbor Global specifically alleges that the ICs are stacked, and shows the configuration that meets this element, where the different components of the ICs are stacked one after another on the chip. *Par Pharm., Inc. v. Hospira, Inc.*, No. 17-944-JFB-SRF, 2018 WL 3343238, at *4 (D. Del. May. 11, 2018) ("Unlike the circumstances before the court in *Cumberland Pharmaceuticals,* the disputed claim terms in the present case do not unambiguously reflect the complete absence of an ingredient expressly contained in the accused Hospira ANDA Product."). Instead, non-infringement is an issue that is decidedly not appropriate on a motion to dismiss. *United Access Techs., LLC v. Centurytel Broadband Servs., LLC*, No. 11-399-LPS, 2016 U.S. Dist. Lexis 135455, at *4 (D. Del. Sept. 30, 2016) ("a court may grant a motion to dismiss only if, after 'accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'") (citation omitted); *Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1128 (Fed. Cir. 2018) ("fact questions [] must be resolved en route to the ultimate legal determination") (vacating the district court's granting of the motion to dismiss); *Kroy IP Holdings, LLC v. Groupon, Inc.*, No. 17-1405-MN-SRF, 2018 U.S. Dist. LEXIS 173437, at *25 (D. Del. Oct. 9, 2018) ("On a motion to dismiss, this question of fact, like all questions of fact, must be resolved in the plaintiff's favor.") (citation omitted). Thus, Xilinx does not have precedential support for its position and its motion should be denied.

### 2.  Xilinx's Claim Construction Argument is Premature and Contradicts the Intrinsic Record.

Pursuant to the Federal Circuit and this district's case law, disputed claim construction issues are inappropriate for resolution on a motion to dismiss as there is no record yet developed in the case. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349-50 (Fed. Cir. 2018); *Eagle Pharms., Inc. v. Hospira, Inc.*, No. 18-1074-CFC, 2019 U.S. Dist. LEXIS 217306, at *4-5 (D.

Del. Dec. 18, 2019).  On this basis alone, Xilinx's non-infringement theory, which relies on Xilinx's construction of the term "stacked" as excluding the configuration used in the Accused ICs is premature and inappropriate for resolution on a motion to dismiss.

Furthermore, the Asserted Patents disclose and cover stacking of IC elements in what Xilinx terms a "side-by-side" arrangement of integrated circuit elements.  For example, the specification of the Asserted Patents describes an example of forming a FPGA module, including a FPGA layer coupled to a microprocessor using through TSAs, which is exactly what Xilinx's Accused ICs do.  D.I. 1-1, Ex. 2 ('214 Patent) at 6:38-7:12.  As shown the Asserted Patents, this FPGA module has contacts that allow for connection to other components.  *Id*. at 7:12-18.  This is illustrated in Figure 10, shown below.



*Fig. 10*

*Id*. at Fig. 10.

The Asserted Patents further explain that the FPGA module can be connected to other components, or have additional functional elements formed on top of the FPGA module.  *Id*. at 7:15-28.  Thus, for example, the Asserted Patents inform one of skill in the art that an inventive FPGA module can be connected to another inventive module, as shown in Figure 10, and illustrated below:

15



*Fig. 10*                                    *Fig. 10*

This portion of the Asserted Patents describes integrated circuit elements using TSVs "stacked with and electrically coupled to" another integrated circuit element using TSVs. Furthermore, there is no basis for limiting the meaning of "stacked with and electrically coupled to" to the narrow illustration of Figure 4.  *Phillips v. AWH Corp.,* 415 F.3d 1303, 1323 (Fed. Cir. 2005) (rejecting that claims limited to specific embodiment disclosed in the specification).  Thus, Xilinx, with its Motion, is also requesting the Court to go against basic principles of claim construction in limiting the Asserted Patents to a single embodiment disclosed in the specification.  Xilinx's argument is therefore fundamentally flawed and should be denied.

> **3.    Xilinx Admits that its Accused ICs are "Stacked" so its Non-Infringement Argument is Not Only Premature but also Incorrect.**

Xilinx's argument that its Accused ICs cannot be considered as "stacked" is belied by its own documentation of its products.  Xilinx represents publicly that its accused products are based on a technology that it calls "stacked silicon interconnects."  The figure below found in Arbor Global's Complaint demonstrates this fact:



D.I. 1 at ¶ 25.

16

To the extent that Xilinx has gone outside the four corners of the Complaint in trying to make claim construction arguments, there is further substantial evidence demonstrating that Xilinx, itself, describes its products as "stacked."  For example, Xilinx's own descriptions of these products, calls this type of IC as "3D FPGA," as it uses a three dimensional architecture. Ex. 7 at 1-2 (https://www.xilinx.com/products/silicon-devices/3dic.html).  Furthermore, Xilinx describes these chips as being stacking, including elements such as the FPGA.  For example, Xilinx's white paper on the Accused ICs describes the configuration used in these chips as a "die stack-up" that includes different FPGA.  Ex. 8 at 4 (https://www.xilinx.com/support/documentation/white_papers/wp380_Stacked_Silicon_Interconnect_Technology.pdf).  Xilinx explains how this type of die stacking works, stating that "[o]riginally developed for use in a variety of die-stacking design methodologies, silicon interposers … acts as a interconnect vehicle based on a silicon manufacturing process … on which multiple die are set side by side and interconnected."  *Id*.  Therefore, Xilinx cannot now argue that when it used the term "stacked" to describe its chips, it is referring to anything other than "stacked" in the claim language.

## B.     Arbor Global Requests Relief in the Alternative.

In the alternative to denying Xilinx's Motion outright, Arbor Global respectfully requests this Court grant it leave to amend its Complaint to add additional support for its infringement allegations because, as shown above, Xilinx represents that its Accused ICs are stacked.  "[L]eave to amend 'shall be freely given when justice so requires,'" *e.g*., to cure deficiencies identified by the Court on motions to dismiss.  *McCoy v. Favata*, No. 17-1046-MN, 2019 WL 1429570, at *14 (D. Del. Mar. 29, 2019) (Noreika, J.) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962) and Fed. R. Civ. P. 15(a)).  "This liberal approach ensures that cases generally will be decided on the merits rather than on technicalities."  *Endo Pharm. Inc. v. Mylan*

17

*Techs. Inc.*, No. 11-220-GMS, 2013 WL 936452, at *6 (D. Del. Mar. 11, 2013).  Indeed, "dismissal with prejudice is 'rarely' a proper sanction."  *Modern Telecom Sys., LLC v. TCL Corp.*, No. 17-583-LPS-CJB, 2017 WL 6524526, at *4 (D. Del. Dec. 21, 2017) (citing *Univ. of Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1334 (Fed. Cir. 2009)); *see also LoganTree LP v. Omron Healthcare, Inc.*, No. 18-1617-MN, 2019 WL 4538730, at *5 (D. Del. Sept. 19, 2019) (Noreika, J.) (dismissing complaint without prejudice and granting leave to file amended complaint to adequately plead patent infringement claim).

## IV.    CONCLUSION

At least for the reasons set forth herein, Xilinx's motion to dismiss should be denied because Arbor Global has constitutional and statutory standing and Xilinx's non-infringement theory is a disputed claim construction issue inappropriate for resolution on a motion to dismiss.

                                             POTTER ANDERSON & CORROON LLP

OF COUNSEL:                                  */s/ Philip A. Rovner*
                                             Philip A. Rovner (#3215)
Paul J. Andre                                Jonathan Choa (#5319)
Lisa Kobialka                                Hercules Plaza
James Hannah                                 P.O. Box 951
Kristopher Kastens                           Wilmington, DE  19899
KRAMER LEVIN NAFTALIS                        (302) 984-6000
& FRANKEL LLP                                provner@potteranderson.com
990 Marsh Road                               jchoa@potteranderson.com
Menlo Park, CA 94025
(650) 752-1700
                                             *Attorneys for Plaintiff Arbor Global*
Jonathan S. Caplan                           *Strategies LLC*
Marcus A. Colucci
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Dated:  January 16, 2020
6544956