## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ARBOR GLOBAL STRATEGIES, LLC.,

Plaintiff

v.

XILINX, INC.,

Defendant.

C.A. No. 19-cv-01986-MN

## XILINX INC.'S REPLY BRIEF IN SUPPORT OF ITS
## MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

FISH & RICHARDSON P.C.
Ronald P. Golden III (#6254)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 652-5070
golden@fr.com

David M. Hoffman
111 Congress Avenue, Suite 810
Austin, TX 78701
(512) 472-5070
hoffman@fr.com

Jeffrey Shneidman
One Marina Park Drive
Boston, MA 02210
(617) 542-5070
shneidman@fr.com

Dated: January 30, 2019

*Attorneys for Xilinx Inc.*

## <u>TABLE OF CONTENTS</u>

I.      Introduction ........................................................................................................1

II.     AGS Has Not Shown It Had Standing to Bring This Lawsuit...............................1

        A.      Arbor Company Assigned the Ownership of and the Right to
                Sue on the Patents-in-Suit to Mary Ann Guzy and Mark Guzy ...............1

        B.      AGS Has Not Shown Any Assignment From Mark Guzy or
                Mary Ann Guzy ......................................................................................3

        C.      AGS's Opposition Relies on Inapposite Case Law And Ignores
                Binding Federal Circuit Precedent.............................................................4

        D.      AGS's Additional Materials Beyond the Pleadings Do Not
                Evince Standing .......................................................................................7

III.    The Complaint Does Not Plausibly Allege Infringement and Instead
        Plausibly Alleges Non-Infringement ....................................................................8

IV.     Conclusion .........................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abraxis Bioscience, Inc. v. Navinta LLC*,
  625 F.3d 1359 (Fed. Cir. 2010)................................................................1, 2, 3, 7

*Akazawa v. Link New Tech. Int'l, Inc.*,
  520 F.3d 1354 (Fed. Cir. 2008)........................................................................7

*Alston v. Parker*,
  363 F.3d 229 (3d Cir. 2004)...........................................................................10

*Applied Cos. v. U.S.*,
  144 F.3d 1470 (Fed. Cir. 1998).........................................................................4

*Contrast DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*,
  517 F.3d 1284 (Fed. Cir. 2008).........................................................................5

*Cumberland Pharm. Inc. v. Sagent Agila LLC*,
  2013 WL 5913742 (D. Del. Nov. 1, 2013) ..........................................................10

*In re Cybernetic Servs., Inc.*,
  252 F.3d 1039 (9th Cir. 2001) ...................................................................2, 3, 4, 5

*Gerber Sci. Int'l, Inc. v. Satisloh*,
  2009 WL 2869705 (D. Conn. Sept. 2, 2009) .......................................................6, 7

*Horatio Washington Depot Techs. v. TOLMAR*,
  No. 17-1086-LPS-CJB, 2018 WL 5669168 (D. Del. Nov. 1, 2018), *report and
  recommendation adopted*, 2019 WL 1276028 (D. Del. Mar. 20, 2019)...................9

*Kanematsu Corp. v. Advanced Materials Lanxide*,
  2002 WL 32332375 (D. Del. Sept. 30, 2002)......................................................5, 6

*Kowalski v. Mommy Gina Tuna Res.*,
  2008 WL 583553 (D. Haw. Mar. 3, 2008)..............................................................2

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
  925 F.3d 1225 (Fed. Cir. 2019).........................................................................1

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)......................................................................................8

*Ottah v. BMW*,
  230 F. Supp. 3d 192 (S.D.N.Y. 2017), *aff'd sub nom. Ottah v. Fiat Chrysler*,
  884 F.3d 1135 (Fed. Cir. 2018)........................................................................10

*Roswell Capital Partners LLC. v. Beshara*,
436 F. App'x 34 (2d Cir. 2011) ................................................................................4

*Samsung Elecs. Co. v. ON Semiconductor Corp.*,
541 F. Supp. 2d 645 (D. Del. 2008).........................................................................8

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*,
944 F.2d 870 (Fed. Cir. 1991)...............................................................................3, 4

*WAG Acquisition, LLC v. Multi Media, LLC*,
2019 WL 3804135 (D.N.J. Aug. 13, 2019) ...............................................................2

*Waterman v. Mackenzie*,
138 U.S. 252 (1891).................................................................................................2

**Statutes**

35 U.S.C. § 261 .................................................................................................................7

I.      INTRODUCTION

Arbor Global Strategies ("AGS")'s opposition to Xilinx's motion to dismiss confirms that AGS is not in possession of a valid assignment of the Patents-in-Suit.  This is a fatal jurisdictional defect.  *See Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364–68 (Fed. Cir. 2010) (vacating jury verdict and reversing district court after three years of litigation due to lack of standing because, like here, plaintiff did not possess title when it filed lawsuit).  AGS's opposition also confirms that it has essentially pled non-infringement of the asserted Patents-in-Suit.

II.     AGS HAS NOT SHOWN IT HAD STANDING TO BRING THIS LAWSUIT

A.      Arbor Company Assigned the Ownership of and the Right to Sue on the Patents-in-Suit to Mary Ann Guzy and Mark Guzy

AGS's opposition asks this Court to ignore the terms of the February 23, 2009 assignment agreement between Arbor Company LLLP ("Arbor") and Mary Ann Guzy and Mark Guzy.  AGS's claim, D.I. 15 at 6, that this "patent collateral assignment merely conveyed a security interest in the asserted patents," is wrong as a matter of law.  *See Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019) (considering if agreement was an assignment, and holding that the "inquiry depends on the substance of what was granted").  Here, by the 2009 Agreement, D.I. 13-1, Ex. A at Frame: 0205, Arbor "**grant[ed], assign[ed], and convey[ed]**" to Mary Ann Guzy and Mark Guzy:

- "the **entire right, title and interest** in and to the Patents[-in-Suit]." *Id.* (emphasis added).

- "the **right to sue** for past, present and future infringements." *Id.* (Emphasis added.)

- "**all rights** corresponding thereto throughout the world and all reissues, divisions, continuations, renewals, extensions and continuations-in-part." *Id.* (Emphasis added.)

The transfer of the "right to sue" here is particularly important, where "the right to sue for past infringement 'must be express, and cannot be inferred from an assignment of the patent itself.'"

1

*Abraxis* 625 F.3d at 1367; *Arachnid, Inc. v. Merit Indus.*, Inc., 939 F.2d 1574, 1579 n.7 (Fed. Cir. 1991) (collecting cases).[1]

Once Arbor executed the February 2009 Agreement to "grant[], assign[], and convey[]" its patent rights, ownership of the patents passed to Mark Guzy and Mary Ann Guzy.  *In re Cybernetic Servs., Inc.*, 252 F.3d 1039, 1050-51 (9th Cir. 2001) ("Supreme Court precedent supports our view that the terms 'assignment, grant or conveyance' [of a patent] refer to ownership interests only.") (quoting and discussing *Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891).   As *Cybernetic* explains, 252 F.3d at 1051, the Supreme Court held in *Waterman* that even if a patent is assigned "as collateral" (as AGS now argues) it is still a transfer of ownership:

> The plaintiff in *Waterman* assigned to his wife a patent for an improvement in fountain pens…. The wife then assigned the patent to a third party **as collateral** for a debt; the document concerning this arrangement was filed with the PTO.  Finally, the wife assigned the patent back to the plaintiff.  The question for the Court was whether the plaintiff had standing to bring an action for infringement of the patent.  The Court held that **only the third party had standing**.  138 U.S. at 261.
> . . .
> Whether a particular conveyance qualifies as an assignment or a license "does not depend upon the name by which it calls itself, but upon the legal effect of its provisions," *id.* at 256; that is, **whether title is passed depends on the rights that were transferred by the contracting parties.  Only the holder of an ownership interest in the patent had standing to sue**.

*Id.* (citing *Waterman*, 137 U.S. at 256-61) (emphasis added); *see also Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991) ("the term 'assignment' has a

---

[1] The grant from Arbor to Mark and Mary Ann Guzy of the "right to sue" and exclude others from practicing the patents shows that the Guzys had more than a "mere security interest" in the patents. *See, e.g., Kowalski v. Mommy Gina Tuna Res.*, No. CIV. 05-00679 BMK, 2008 WL 583553, at *3 (D. Haw. Mar. 3, 2008) ("[A] security interest [is] not a present ownership interest. . . .  Without an ownership interest in the patent itself, [a person] does not now have, nor has . . . ever had, the right to sue others for infringement . . . ."); *WAG Acquisition, LLC v. Multi Media, LLC*, No. CV142340ESMAH, 2019 WL 3804135, at *4 (D.N.J. Aug. 13, 2019) ("Plaintiff agreed to give [third party] a security interest in the patents as collateral, and [third party] may convert the patents to its name if Plaintiff defaults. . . . [Third party's] right to convert the patents [is] a 'contingenc[y]' that does 'not confer exclusionary rights.'").

particular meaning in patent law, implying formal transfer of title."). Here, Arbor explicitly "grant[ed], assign[ed], and convey[ed] the entire right, title and interest in and to the Patents[-in-Suit]" as well as "the right to sue for past, present and future infringements," i.e, a complete bundle of ownership rights.  D.I. 13-1, Ex. A at Frame: 0205

### B.    AGS Has Not Shown Any Assignment From Mark Guzy or Mary Ann Guzy

The 2009 Agreement provides no automatic mechanism by which any title or right to sue would pass from Mary Ann or Mark Guzy to any other party.  Instead, there is a future promise that, "[a]t such time as Assignee executes the Release" the "Assignee shall execute and deliver to Assignor all deeds, assignments and other instruments as may be necessary or proper to re-vest in Assignor full title to the Patents, subject to any disposition thereof which may have been made by Assignee pursuant hereto."  D.I. 13-1, Ex. A, Frame: 0206 at ¶ 8.

Under binding Federal Circuit law, a contractual provision that states a person "shall execute and deliver" "reflects a mere promise to assign rights in the future, not an immediate transfer of expectant interests."  *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1365 (Fed. Cir. 2010).  That is, "[c]ontracts that obligate a patent owner to grant rights in the future do not vest legal title to the patents."  *Id.*  Here, Mary Ann and Mark Guzy may—or may not—be under a ripe contractual obligation to assign their rights to "Assignor" Arbor (not Plaintiff AGS) "subject to any disposition thereof which may have been made by [Mary Ann and Mark Guzy]."  But in either case, (1) no such assignment of rights has occurred, and (2) any dispute as to this issue is not between AGS and Xilinx.[2]

---

[2] Though not an issue before this Court, AGS has not shown that this contractual provision is ripe.  The condition precedent for this clause is the execution of a release, and AGS concedes in its opposition that "Arbor Company **did not** require Mark and Mary Ann to execute separate releases of parties,"  D.I. 15 at 5 n.3 (emphasis added); further, AGS does not contest Xilinx's observation that Arbor, Mark and Mary Ann Guzy are still in litigation with each other.  D.I. 12 at 5 n.4.

3

C.    **AGS's Opposition Relies on Inapposite Case Law And Ignores Binding Federal Circuit Precedent**

In opposing Xilinx's motion, AGS primarily relies on cases that have nothing to do with patent law, and AGS's chief patent authority is a single unpublished opinion which the judge quickly amended and stayed for interlocutory review by the Federal Circuit.  Moreover, AGS disregards binding Federal Circuit law contrary to its position.

AGS first relies on cases that have nothing to do with patents, such as a case involving a right to future revenues from a government contract offered to secure a bank loan, *Applied Cos. v. U.S.*, 144 F.3d 1470, 1473-77 (Fed. Cir. 1998), and a summary decision case involving promissory notes, *Roswell Capital Partners LLC. v. Beshara*, 436 F. App'x 34, 35 (2d Cir. 2011). These cases are not talking about patent assignments, which have "a particular meaning in patent law, implying formal transfer of title."  *Vaupel*, 944 at 875; *Cybernetic*, 252 F.3d at 1049-51 (citing *Waterman*, 137 U.S. at 256-61) (noting patent "assignment" refers to a transaction that "transferred specific rights in the patent, all involving the patent's title.")  The inapplicability of these cases is underscored by AGS's confused argument that an assignment can "extinguish" and its reference to these cases involving liens.  D.I. 15 at 6 & n.4 (citing a case stating "[i]f the claim disappears—poof! the lien is gone").

There is no "poof" to "extinguish" ownership; such vocabulary is simply not applicable to questions of title.  Rather, when Arbor and Mary Ann and Mark Guzy executed the 2009 assignment, Arbor's ownership of the patents transferred to Mark and Mary Ann Guzy, complete with the explicit right to sue others. *Cf. Cybernetic*, 252 F.3d at 1051 (collecting Supreme Court cases for the teaching that "whether title is passed depends on the rights that were transferred by the contracting parties.  Only the holder of an ownership interest in the patent had standing to sue.").  AGS is now trying to concoct an automatic transfer of patent rights away from Mary Ann

and Mark Guzy that explicitly does not exist in the terms of the 2009 assignment agreement, as discussed above.  *Contrast DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008) (discussing an agreement where transfer of ownership is "automatic, requiring no further act on the part of the assignee").

The only case cited by AGS that involves a true "security interest" in a patent demonstrates how a true "security interest" situation is inapplicable to the facts at hand.  In *Kanematsu Corp. v. Advanced Materials Lanxide*, LLC, No. CIV.A. 01-190-JJF, 2002 WL 32332375, at *5-6 (D. Del. Sept. 30, 2002), the Court observed that whether "a transaction should be considered an assignment" depends on "whether the 'obligee manifests an intention to transfer present ownership of the right.'"  *Id.* (citation omitted).  Contractual language that did not contain any "assignment, divestiture of title, or transfer of ownership" was not a transfer of ownership.  *Id.* The Court then considered explicit language that stated only that "[i]n order to secure payment to [Kanematsu] by Lanxide of any remaining balance of the $10 million loan obligation . . . Lanxide hereby grants to [Kanematsu] a first and prior security interest in all of LTC's Japanese patents." *Id.* at *2.  The Court noted that this "plain language" was for creation of a "security interest" and there was no argument that such an explicit provision transferred ownership.  *Id.* at *6-7.  In contrast, the case now before this Court involves an Agreement that "grants, assigns, and conveys . . . the entire right, title and interest in and to the Patents[-in-Suit and] the right to sue for past, present and future infringement."  Under the very *Kanematsu* case that AGS cites, the language in the 2009 assignment agreement "express[es] intent to transfer ownership." *Id.* at *5.

Finally, AGS's reliance on the unpublished opinion in *Gerber Sci. Int'l, Inc. v. Satisloh*, No. 07-CV-1382, 2009 WL 2869705 (D. Conn. Sept. 2, 2009) is not helpful.  **First**, AGS fails to disclose that the *Gerber* judge amended his opinion, stayed his decision, and certified his order

for review by the Federal Circuit after the Defendant moved for interlocutory appeal.  *See* Ex. A, *Gerber Sci. Int'l, Inc. v. Satisloh*, No. 07-CV-1382, D.I. 103 (D. Conn. Sept. 25, 2009).[3]  The Defendant in its motion for interlocutory review cited Federal Circuit and Supreme Court precedent that the document was not a "mere security interest" and that there had been no transfer back to the purported plaintiff.  *See* Ex. B, *Gerber Sci. Int'l, Inc. v. Satisloh*, No. 07-CV-1382, D.I. 102 at *5-7 (D. Conn. Sept. 14, 2009).  The issue was certified, but the parties settled before the Federal Circuit heard the appeal.

**Second**, unlike here, the third party in *Gerber* had "filed an express termination of its interest in the patents" and provided sworn testimony to the *Gerber* judge wherein the third party "declared that it has no 'right, title, or interest' in the patent," 2009 WL 2869705, at *6 (citing third party declaration).  In contrast here, there has been no such declaration or testimony from the last unbroken owners of record in the USPTO's Patent Assignment database, i.e., Mark Guzy or Mary Ann Guzy, let alone a valid assignment made prior to initiation of this lawsuit.  It is not even clear if AGS or Arbor (which is apparently controlled by other members of the Guzy family) have informed Mary Ann or Mark Guzy of AGS's *ex parte* assumption of the patent rights.

**Third**, the unpublished and stayed district court order in *Gerber* from 2009 predates published binding Federal Circuit precedent, including *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364–65 (Fed. Cir. 2010).  *Gerber*'s starting premise that "state law governs interpretation of the [patent] assignment contract" is incorrect, where *Abraxis* holds that whether there is automatic assignment "is intimately bound up with the question of standing in patent cases [and is thus] a matter of federal law."  *Abraxis*, 625 F.3d at 1364.  Moreover, the Federal Circuit's holding in *Abraxis* that "contracts that obligate the owner to grant rights in the future **do not** vest

---

[3] Exhibits A and B are attached to the Declaration of Ronald P. Golden III, filed at D.I. 20.

legal title to the patents in the assignee," *id.* at 1364-65 (emphasis added), effectively distinguishes any of *Gerber*'s reasoning that treated "shall" language as "a contract which states that patent rights re-vest with assignor at termination." *Gerber*, 2009 WL 2869705 at \*5-6 & n.2.  As *Abraxis* holds, "a mere promise to assign rights in the future [is] not an immediate transfer of expectant interests." *Abraxis*, 625 F.3d at 1364.  In sum, as noted in Xilinx's motion, "[Arbor] could not assign the patents [to AGS] because [Arbor] did not possess their titles.  [Arbor] had no legal title to assign and, therefore, [AGS] lacked standing to commence this litigation." *Id.* at 1365.[4]

### D.   AGS's Additional Materials Beyond the Pleadings Do Not Evince Standing

AGS attaches several exhibits to its opposition, but none shows that it had standing to initiate this lawsuit.  **First**, AGS attaches an alleged "Settlement Agreement" that contains no transfer of patent rights from Mary Ann or Mark Guzy.  Ex. 16-1 at Ex. 1.  **Second**, AGS attaches alleged UCC Filing records that mention "certain consumer goods, personal property, artwork, antiques, and jewelry" and do not mention any patents.  Nor are they a transfer of patent rights from Mary Ann or Mark Guzy.  Ex. 16-1 at Ex. 2-3.  **Third**, AGS attaches a court filing by Mark Guzy that again does not mention the patents, and is neither a transfer of patent rights nor a release. Ex. 16-1 at Ex. 4.  **Fourth**, AGS attaches an order relating to a judgment wherein "all liens and notice of liens [by Mary Ann Guzy] are extinguished."  Ex. 16-1 at Ex. 5.  But the present case before this Court does not involve a "lien" (whether "extinguished" or not); this case is about title. Ex. 5 does not mention patents and is not a transfer of any Patent rights.  **Fifth**, AGS attaches the

---

[4] AGS's final remaining substantive case citation is similarly unhelpful to AGS's position.  AGS cites *Akazawa v. Link New Tech. Int'l, Inc.*, 520 F.3d 1354, 1357 (Fed. Cir. 2008) for the proposition that "ownership of a patent may be changed by operation of law."  That is correct and unremarkable, and in *Akazawa*, the only such example discussed is intestacy and "ownership of a patent following a patent owner's death."  The case also notes that "patent ownership may be transferred by assignment, and section 261 addresses such a transfer—**requiring assignments to be in writing**.  *See* 35 U.S.C. § 261."  *Akazawa*, 520 F.3d at 1356 (emphasis added).

same recent defective assignment by Arbor Company and AGS that Xilinx had attached to its motion to dismiss, D.I. 13-1, Ex. C.

Xilinx put AGS on notice of its standing defect through its informal November 15, 2019 letter.  D.I. 13-1, Ex. D.  Since that time, despite repeated requests, AGS has failed to produce a valid assignment from Mary Ann and Mark Guzy, which is a *de facto* admission that it does not possess one.  For the reasons given in its motion and above, AGS has failed to meet its burden to show it had standing to initiate this lawsuit.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Samsung Elecs. Co. v. ON Semiconductor Corp.*, 541 F. Supp. 2d 645, 648 (D. Del. 2008).

## III.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE INFRINGEMENT AND INSTEAD PLAUSIBLY ALLEGES NON-INFRINGEMENT

AGS's opposition glosses over its failure to allege that the Accused Products meet any of the asserted claims.  Contrary to AGS's argument, this is not an issue of claim construction: there is nothing to construe when the Complaint is simply missing any allegation of required elements. For example, as Xilinx argued in its motion, AGS does not allege that the Accused Products contain a "**microprocessor** integrated circuit die element **stacked** with and electrically coupled to said **programmable array**" as required by asserted claim 1 in U.S. Patent No. 6,781,226.  D.I. 1, Ex. 1 at 6:16-26 (emphasis added).  The Complaint is similarly deficient as to the asserted claims of the other Patents-In-Suit.[5]  A search of the Complaint confirms that taking all well-pleaded facts as true, the Complaint fails to allege **stacking of these required circuit elements**, and does not

---

[5] *Compare* Complaint, D.I. 1 (failing to allege the following bolded patent claim requirements) *with* asserted claim 1 in U.S. Patent No. 7,126,214, D.I. 1, Ex. 2 at 7:56-67 (reciting "**memory array stacked** with and electrically coupled to said **field programmable gate array**"); asserted claim 1 in 7,282,951, D.I. 1, Ex. 3 at 7:58-8:4 (reciting "second integrated circuit [including a **memory array**] **stacked** with and electrically coupled to said **programmable array**"); asserted claim 23 in RE42,035, D.I. 1, Ex. 4 at 7:39-49 (reciting "**memory array stacked** with and electrically coupled to said **field programmable gate array**").

state a claim for relief.  *See Horatio Washington Depot Techs. v. TOLMAR*, No. 17-1086-LPS-CJB, 2018 WL 5669168, at *11-12 (D. Del. Nov. 1, 2018), *report and recommendation adopted*, 2019 WL 1276028 (D. Del. Mar. 20, 2019) ("Defendants are correct that Plaintiff has not pleaded facts relating to these claim limitations, sufficient to explain why it is plausible that Defendants' product/acts satisfy those elements of the claims.").[6]

AGS now attempts to augment its pleadings by attaching extraneous exhibits and creating figures and arguments that are not in the patents or Complaint.  *See* D.I. 15 at 16 (AGS's new illustration not in the pleadings).  But even if the Court does not exclude and considers materials beyond the Complaint, they are not helpful to AGS as they do not disclose the missing claim requirements.  Indeed, AGS creatively quotes from its own Exhibit 8, excluding language that the accused products' "SSI technology **avoids** the power and reliability issues **that can result from stacking** multiple FPGA dies on top of each other."[7]  *See* D.I. 16-1, Ex. 8 at 4 (emphasis added); D.I. 15 at 17 (quoting Ex. 8).  If anything, like the allegations in AGS's Complaint, these materials show the opposite of what is required by the Patents-In-Suit.

Contrary to its argument in opposition, claim construction is not necessary for the Court to dismiss AGS's claims, as the asserted claims' stacking requirements are the opposite of the Complaint's allegations that circuit elements are "side-by-side."  *See* D.I. 1, ¶¶ 26, 28, 37, 38, 39, 41, 56, 58, 74, 75, 76, 92, 93.  "No claim construction is necessary in order to determine that

---

[6] Xilinx pointed to this problem in its motion, but AGS's response ignores the issue.  Another example from Xilinx's motion is that Complaint "paragraph 57 uses the term 'electrically coupled' which is language that appears immediately adjacent to the 'stacked' limitation in '214 Patent claim 1 [recited for the Court's convenience at D.I. 12 at 12] but the Complaint pointedly omits any allegation that the FPGA and memory are 'stacked.'"  D.I. 12 at 12-13.  AGS would need a Rule 11 basis to allege these missing elements, but they are not in the accused products.

[7] AGS's opposition now reveals AGS omitted the second half of the sentence above from its Complaint that actually distinguishes the technology "from stacking."  *See* Compl. ¶¶ 38, 41, 58, 74, 76, 93 (alleging only that "SSI technology avoids the power and reliability issues.")

[reciting a claim element] means that a claim [includes that element]." *Cumberland Pharm. Inc. v. Sagent Agila LLC*, No. 12-825-LPS, 2013 WL 5913742, at *2 (D. Del. Nov. 1, 2013). In other words, if the Patent claim requires an element to be present, a valid Complaint cannot show that the element is not present in the Accused Products. Yet, that is precisely the situation here.

Furthermore, AGS's alternate request to amend would be futile. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (amendment need not be permitted where it would be "futile"); *Ottah v. BMW*, 230 F. Supp. 3d 192, 198 (S.D.N.Y. 2017), *aff'd sub nom. Ottah v. Fiat Chrysler*, 884 F.3d 1135 (Fed. Cir. 2018) ("The plain language of the [patent] demonstrates that the SAC cannot be amended to cure its fundamental defects, and accordingly, it is dismissed with prejudice in its entirety.") AGS has already alleged that the integrated circuits in the accused products, specifically the FPGA and memory, are side-by-side. *See* D.I. 1 ¶¶ 26, 28, 37, 39, 56, 58, 75, 92 ("FPGA" and "memory" side-by-side). Having made this representation to the Court, AGS cannot amend its Complaint to declare the opposite, that these components are actually stacked. *Cumberland*, 2013 WL 5913742, at *3 (closing case where complaint alleged non-infringement).

## IV.  CONCLUSION

For the reasons discussed above and in its initial motion, AGS has failed to demonstrate constitutional or statutory standing, or remedy its pleading that the Accused Products effectively do not infringe the Patents-in-Suit. Xilinx respectfully requests this Court GRANT its motion to dismiss on all grounds.

Dated:  January 30, 2020              FISH & RICHARDSON P.C.


                                      By:  */s/ Ronald P. Golden III*
                                            Ronald P. Golden III (#6254)
                                            222 Delaware Avenue, 17th Floor
                                            Wilmington, DE 19801
                                            (302) 652-5070
                                            golden@fr.com

                                            David M. Hoffman
                                            111 Congress Avenue, Suite 810
                                            Austin, TX 78701
                                            (512) 472-5070
                                            hoffman@fr.com

                                            Jeffrey Shneidman
                                            One Marina Park Drive
                                            Boston, MA 02210
                                            (617) 542-5070
                                            shneidman@fr.com

                                      **ATTORNEYS FOR DEFENDANT**
                                      **XILINX, INC.**