IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARBOR GLOBAL STRATEGIES LLC, a Delaware Limited Liability Company, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 19-1986 (MN) |
| XILINX, INC., | ) ) ) |
| Defendant. | ) |

# MEMORANDUM OPINION

Philip A. Rovner, Jonathan Choa, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Paul J. Andre, Lisa Kobialka, James Hannah, Kristopher Kastens, KRAMER LEVIN NAFTALIS & FRANKEL LLP, Menlo Park, CA; Jonathan S. Caplan, Marcus A. Colucci, KRAMER LEVIN NAFTALIS & FRANKEL LLP, New York, NY – Attorneys for Plaintiff

Ronald P. Golden III, FISH & RICHARDSON P.C., Wilmington, DE; David M. Hoffman, FISH & RICHARDSON P.C., Austin, TX; Jeffrey Shneidman, FISH & RICHARDSON P.C., Boston, MA – Attorneys for Defendant

August 12, 2020
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Before the Court is the motion (D.I. 26) of Defendant Xilinx, Inc. ("Defendant" or "Xilinx"") to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the Court DENIES Defendant's motion.

**I.     BACKGROUND**

Plaintiff Arbor Global Strategies, LLC ("Plaintiff" or "Arbor") is a Delaware limited liability company engaged in the electronics and computer industry with its principal place of business in Glenbrook, Nevada. (D.I. 1 ¶ 1).[1] Defendant is a Delaware corporation with its principal place of business in San Jose, California. (D.I. 1 ¶ 3). On October 18, 2019, Plaintiff filed the present action, alleging that Defendant's products and services that utilize Xilinx's integrated circuits with 3D Stacked Silicon Interconnects and high bandwidth memory infringe at least one claim of each of four patents owned by Arbor. Plaintiff also assert that Defendant induces infringement by third parties who manufacture the accused products.

On December 19, 2019, Defendant moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[2] (D.I. 11). Approximately three months later, on March 11, 2020, Defendant filed a motion to transfer this action to the Northern District of California, where Defendant is headquartered. Plaintiff opposes transferring this action and briefing on Defendant's motion was complete on February 10, 2020. (*See* D.I. 30 & 33).

---

[1]   The Complaint alleges that Plaintiff "is a Delaware corporation" (D.I. 1 ¶ 1), but it is apparent from the Plaintiff's name that it is a limited liability company.

[2]   On August 12, 2020, the Court denied Defendant's motion to dismiss. (D.I. 39).

1

## II.  LEGAL STANDARD

District courts have the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "A plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses.'"  *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 371 (D. Del. 2012) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)).  Plaintiff's choice of location in bringing the action "should not be lightly disturbed."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

In determining whether an action should be transferred under § 1404(a), the Third Circuit has recognized that:

> courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Jumara*, 55 F.3d at 879 (citation omitted).  The *Jumara* court went on to describe twelve "private and public interests protected by the language of § 1404(a)."  *Id.*  The private interests include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* at 879 (citations omitted).  The public interests include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80.

The party seeking transfer bears the burden "to establish that a balancing of proper interests weigh[s] in favor of transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Courts have "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara*, 55 F.3d at 883. The Third Circuit has held, however, that "unless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25.

### III. DISCUSSION

As an initial matter, the Court addresses the threshold inquiry under § 1404(a) – *i.e.*, whether this action might have originally been brought in the transferee district. Here, there is no dispute that this case could have originally been brought in the Northern District of California, the district where Defendant's principal place of business is located.[3] (D.I. 27 at 1). Indeed, the focus of Plaintiff's opposition is the private and public interest factors under *Jumara*. As the threshold inquiry under § 1404(a) is not contested, the only issue before the Court is whether to exercise its discretion under § 1404(a) to transfer the case to that district. The Court addresses the *Jumara* factors in turn below.

    1.    <u>Plaintiff's Forum Preference</u>

As Defendant concedes, this factor weighs against transfer. (D.I. 27 at 6) "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request" – one that "should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (internal quotations and citation omitted). "Assuming jurisdiction and proper venue, weight is given to

---

[3] Defendant – a Delaware corporation – does not dispute that venue is proper in this District or that personal jurisdiction exists here.

3

plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer." *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761, 763 n.4 (D. Del. 1975).

      2.      <u>Defendant's Forum Preference</u>

This factor favors transfer. Defendant's interest in having this case transferred to the Northern District of California is apparent.

      3.      <u>Whether the Claims Arose Elsewhere</u>

This factor is neutral. Defendant contends that this factor weighs in favor of transfer because "Xilinx primarily researched, designed, developed, and marketed the accused products in this case at its headquarters . . . in the Northern District of California" and because the allegations of indirect infringement involve a third party manufacturer in that district. (D.I. 27 at 7-8). The Court acknowledges that these facts may weigh slightly in favor of transfer. *See In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009); *see also Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 730 (D. Del. 2012) ("[T]o some extent, [infringement] claims ar[i]se where the allegedly infringing products [a]re designed and manufactured." (quotation marks and citation omitted) (alterations in original)). Patent-infringement claims, however, arise wherever alleged infringement has occurred. *See Treehouse Avatar LLC v. Valve Corp.*, 170 F. Supp. 3d 706, 710 (D. Del. 2016) (citing 35 U.S.C. § 271(a); *Red Wing Show Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)). It is noteworthy that Defendant does not assert that the accused products are not used or sold in this District. In its reply papers, Defendant ignores this point, instead focusing on the development work on the accused products near and in the Northern District of California as well as the third party manufacturer. (D.I. 33 at 4-5). Yet selling or offering to sell the accused products in Delaware would constitute an alleged act of

infringement within the meaning of § 271(a), thereby giving rise to a claim that arises in this District.  Therefore, the Court concludes that this factor is neutral.

> 4. Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition

This factor is neutral.  Determining convenience of the parties requires the Court to consider:  (1) the parties' physical location; (2) the associated logistical and operational costs to the parties in traveling to Delaware – as opposed to the proposed transferee district – for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal.  *See MEC Resources, LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017) (citing *Memory Integrity, LLC v. Intel Corp.*, No. 13-1804 (GMS), 2015 WL 632026, at *4 (D. Del. Feb. 13, 2015) (internal quotations omitted)).  Because Defendant is a Delaware corporation, it "must prove that litigating in Delaware would impose a unique or unusual burden on [its] operations."  *Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 325 (D. Del. 2013) (alteration in original) (internal quotation marks and citation omitted); *see also Universal Secure Registry, LLC v. Apple, Inc.*, No. 17-585 (CFC) (SRF), 2018 WL 4502062, at *3 (D. Del. Sept. 19, 2018) ("When a party accept[s] the benefits of incorporation under the laws of the State of Delaware, a company should not be successful in arguing that litigation in Delaware is inconvenient, absent some showing of a unique or unexpected burden." (internal quotation marks and citation omitted) (alteration in original)).

Here, Defendant argues that transferring to the Northern District of California would be more convenient because "Xilinx and third-party witnesses located in or around San Jose will not need separate hotel or airfare to be able to testify, will not lose days on either end of their testimony for cross-country travel . . .".  (D.I. 27 at 9-11).  Given that Defendant is incorporated in Delaware, it must demonstrate that litigating here "would impose a unique or unusual burden on [its]

5

operations." *Graphics Props. Holdings*, 964 F. Supp. at 325.  Even if Defendant's stated reasons make litigating in the Northern District of California more convenient for Defendant, the Court is unable to conclude that Defendant cannot shoulder the burden of litigating here instead or that this would present some unique hardship on Defendant.

In its opposition, Plaintiff asserts that Defendant's status as a global corporation with thousands of employees and offices throughout the world,[4] its significant financial resources, and its status as a Delaware corporation negate any assertion that Defendant is actually inconvenienced by having to litigate in Delaware.  (D.I. 30 at 5-7).  The Court agrees that Defendant's financial status is relevant to the § 1404(a) analysis and, although the Court acknowledges that litigation carries an inherent burden, Defendant has failed to show it would suffer a unique burden under the facts here.  This conclusion is bolstered by the fact that the Court anticipates the majority of discovery will likely occur in California or in another place agreed upon by the parties and that this litigation is unlikely to proceed through to a trial (as is true for most cases).  *See, e.g.*, *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, No. 15-1168 (LPS) (CJB), 2016 WL 8677211, at *7 (D. Del. Sept. 23, 2016) ("[A]ny additional inconvenience to [Defendant's] employee witnesses in traveling to Delaware for pre-trial or trial proceedings is diminished by the fact that the amount of such travel is not likely to be large – particularly if the case (as most do) resolves prior to trial."); *Graphics Props. Holdings*, 964 F. Supp. 2d at 328 ("[A]s a practical matter, regardless of the trial venue, most of the discovery will take place in California or other locations mutually agreed to by the parties."); *see also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 757

---

[4] Defendant offered a declaration from Xin Wu, Vice President, Silicon Technology for Xilinx, attesting that Xilinx has approximately 1,760 employees who work in San Jose, California, and the Xilinx employees relevant to the products at issue in this case primarily work in Xilinx's office in San Jose, California.  (D.I. 27, Ex. A at 2-3).

(D. Del. 2012) ("It is overwhelmingly likely, however, that any federal civil litigation – including the instant case – will ***not*** actually go to trial." (emphasis in original)), *mandamus denied sub nom. In re Altera Corp.*, 494 F. App'x 52 (Fed. Cir. 2012).

Defendant also suggests that litigating in the Northern District of California would be more convenient for Plaintiff, as Plaintiff and their "Chairman, President, and Co-founder" and co-inventor on the patents, D. James Guzy, are located just ten miles over the California border in Nevada. (D.I. 27 at 10-11). The Northern District of California may appear marginally more convenient for Plaintiff than this District, but Plaintiff has submitted a declaration from Mr. Guzy disputing that, and attesting that he lives and works in London, U.K. and that travel to Delaware is more convenient for him. (D.I. 31 at 1). Mr. Guzy further attests that his father, an inventor of the asserted patents, resides in Nevada and another inventor, Jon Huppenthal, resides in Colorado. (*Id.*). Moreover, Plaintiff "has chosen to litigate this matter in Delaware and that choice signals its belief that litigation here is most convenient for it, for whatever its reasons." *Tessera, Inc. v. Sony Elecs., Inc.*, No. 10-838 (RMB) (KW), 2012 WL 1107706, at *4 (D. Del. Mar. 30, 2012). Thus, this factor is neutral.

     5.     <u>Convenience of the Witnesses</u>

This factor is neutral. This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also VLSI*, 2018 WL 5342650, at *7 (citing *Smart Audio*, 910 F. Supp. 2d at 732 (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena")). "[W]itnesses who are employed by a party carry no weight" because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). "[T]he Court should be particularly concerned not to countenance undue

7

inconvenience to third-party witnesses[] who have no direct connection to the litigation." *Intellectual Ventures I*, 842 F. Supp. 2d at 757.

Defendant points to one third party, manufacturer Taiwan Semiconductor Manufacturing Company ("TSMC"), arguing that TSMC's U.S. subsidiary is located in San Jose, California (D.I. 27, Ex. A ¶ 11) and that it would want to call TSMC to testify and show that Xilinx did not induce TSMC to infringe the patents-in-suit. (D.I. 27 at 11-12). According to Defendant, other yet unknown witnesses are also likely to be located closer to the Northern District of California than they are to this District. (*Id.*). As to TSMC and potential third-party witnesses who are outside the subpoena power of this Court – a consideration only relevant to ensure appearance at trial – there is no evidence in the record that these witnesses would not appear for trial without a subpoena. *See Intellectual Ventures I*, 842 F. Supp. 2d at 758 ("If this case turns out to be one of the statistically rare cases to go to trial, it is always possible, if not likely, that third-party fact witnesses with material, non-cumulative evidence will voluntarily appear at trial."). Therefore, the Court ultimately concludes that this factor is neutral.

    6.   Location of Books and Records

This factor slightly favors transfer. *Jumara* instructs the Court to give weight to the location of books and records necessary to the case only "to the extent that the files [and other evidence] could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. Defendant argues that this factor favors transfer because "Northern District of California is home to the vast majority of sources of proof relevant to this case." (D.I. 27 at 12). In support, Defendant's declarant Dr. Wu attested that relevant physical evidence is likely to be located in the Northern District of California, easing its presentation at trial (D.I. 27, Ex A ¶ 15) and documents related to the development, production, and sales of the accused products in the United States, and business

8

records are within the Northern District of California (D.I. 27, Ex. A ¶¶ 4-7).  In its opposition, Plaintiff argues that this factor is neutral, focusing on the fact that Defendant has failed to demonstrate that any documents or other evidence could not be produced here or that some evidence would be "especially difficult to transport to Delaware."  (D.I. 30 at 13).

Although the Court agrees that Defendant has failed to demonstrate some evidence could not be produced here, Defendant has shown that much of the relevant evidence is either located in or more easily produced in the Northern District of California.  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).  That being said, the Third Circuit has instructed that the relevant consideration here is whether the evidence could not be produced in the competing fora.  *See Jumara*, 55 F.3d at 879.  With the state of technology in litigation today and the ease with which documentary evidence can be produced electronically, the Court finds that this factor – although favoring transfer – should be afforded minimal weight.  *See, e.g.*, *Blackbird Tech LLC v. E.L.F. Beauty, Inc.*, No. 19-1150-CFC, 2020 WL 2113528, at *4 (D. Del. May 4, 2020); *Intellectual Ventures I*, 842 F. Supp. 2d at 759.  Therefore, this factor weighs in favor of transfer, but only slightly.

7. Enforceability of the Judgment

The parties agree that this factor is neutral as judgments from this District and the Northern District of California would be equally enforceable.

8. Practical Considerations

This factor is neutral.  The Court must consider "practical considerations that could make the trial easy, expeditious, or inexpensive."  *Jumara*, 55 F.3d at 879.  Defendant argues that this

9

factor weighs in favor of transfer because Defendant is headquartered in the Northern District of California, Plaintiff is headquartered nearby in Nevada, and thus "the parties and witnesses are more than 2500 miles closer to the Northern District of California than to Delaware." (D.I. 27 at 13). In response, Plaintiff argues that Defendant is simply repeating its arguments for other factors and that these considerations should not be double-counted. (D.I. 30 at 14). The Court agrees with Plaintiff. Defendant's contentions "have been raised, in the same way, as to other *Jumara* factors, and so the Court will not 'double-count' them here." *Elm 3DS Innovations LLC v. SK Hynix, Inc.*, No. 14-1432 (LPS) (CJB), 2015 WL 4967139, at *11 (D. Del. Aug. 20, 2015). Therefore, because there is no broader public benefit to this case proceeding in this Court versus the Northern District of California (or vice versa), this factor is neutral. *See W.R. Berkley Corp. v. Niemela*, No. 17-32 (GMS), 2017 WL 4081871, at *4 (D. Del. Sept. 15, 2017) (finding factor to be neutral when "neither party addresse[d] the broader public costs of proceeding in one district or the other").

9. <u>Relative Administrative Difficulty Due to Court Congestion</u>

This factor is neutral. The Court takes judicial notice of the most recent Judicial Caseload Profiles,[5] as of December 31, 2019, which indicate that, in the District of Delaware, the median length of time between filing and trial for civil cases is 30.9 months and the median length of time between filing and disposition in civil cases is 5.3 months. In the Northern District of California, the median lengths of time in civil cases between filing and trial and filing and disposition are 22.3 months and 8.5 months, respectively. The December 31, 2019 profile also indicates that there are 646 cases pending per judgeship in the District of Delaware, whereas there are 854 cases pending

---

[5] The December 2019 statistics for the District Courts of the United States can be found at: https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf.

per judgeship in the Northern District of California. These statistics counsel the Court that the two districts are similarly congested and, thus, this factor is neutral.

10. <u>Local Interest in Deciding Local Controversies at Home</u>

This factor is neutral. Defendant argues that this factor favors transfer because "[o]ther than Plaintiff's selection of this district, the controversy has no significant connection to Delaware." (D.I. 27 at 15-16). Defendant also reiterates that "[t]he Northern District of California is home to Xilinx." (D.I. 27 at 15). However, "in patent infringement cases the local interest factor is typically neutral 'because patent issues do not give rise to a local controversy or implicate local interests.'" *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 486 (D. Del. 2011) (quoting *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008)). Although Defendant does have connections with the Northern District of California (*e.g.*, employees there and generating revenue within the state), the Court finds it relevant that Defendant is a global company with a significant number of employees throughout the world.[6] This suggests that Defendant is not a "local" company in the Northern District of California such that local interests are, in fact, implicated here. *See, e.g.*, *Rosebud LMS, Inc. v. Salesforce.com, Inc.*, No. 17-1712-CFC, 2018 WL 6061343, at *7 (D. Del. Nov. 20, 2018) ("Salesforce, with thousands of employees in dozens of countries, is not a 'local' company; and its dispute with Rosebud, which does not reside in California, is not a 'local controversy' in the Northern District."). Thus, in the Court's view, this factor is neutral.

---

[6] Defendant does not dispute Plaintiff's assertions (D.I. 30 at 6-7) that Xilinx is a multinational company with thousands of employees around the world. (*See also* D.I. 33 at 1).

11

11. <u>Public Policies of the Fora</u>

The parties contend that this factor is neutral. In the Court's view, however, this factor weighs slightly against transfer because Plaintiff is a Delaware limited liability company and Defendant is a Delaware corporation and public policy encourages Delaware corporations to resolve disputes in Delaware courts. *See, e.g.*, *Graphics Props. Holdings Inc.*, 964 F. Supp. 2d at 331 (even where only one party is a Delaware corporation, public policy encouraging Delaware corporations to resolve disputes in Delaware weighs against transfer). There is no similar argument for the Northern District of California as neither party is a California company.

12. <u>Familiarity of the Trial Judge with the Applicable State Law in Diversity Cases</u>

The parties agree that this factor is neutral as Plaintiff's claims arise under federal patent laws and the familiarity of the respective districts with state law is not applicable.

13. <u>Balancing the Private and Public Factors</u>

After balancing the twelve *Jumara* factors, the Court concludes that this case should not be transferred to the Northern District of California. Eight factors are neutral, and two factors weigh in favor of transfer, with one favoring transfer only slightly. Two factors weigh against transfer, including Plaintiff's choice of this forum, which is to be given paramount consideration. Looking at the factors together and giving each its appropriate weight, Defendant has failed to meet the heavy burden of showing that the *Jumara* factors weigh strongly in favor of transfer.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to transfer the case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) is DENIED. An appropriate order will follow.